```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/28/2022____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREATER CHAUTAUQUA FEDERAL CREDIT
UNION, individually and on behalf of all others
similarly situated, BOULEVARD FEDERAL
CREDIT UNION, individually and on behalf of all
others similarly situated, GREATER NIAGARA
FEDERAL CREDIT UNION, individually and on
behalf of all others similarly situated,

                               Plaintiffs,

                            -against-

HON. LAWRENCE K. MARKS, in his official
capacity as Chief Administrative Judge of the Courts,
SHERIFF JAMES B. QUATTRONE, in his official
capacity as Sheriff of Chautauqua County, New
York, SHERIFF JOHN C. GARCIA, in his official
capacity as Sheriff of Erie County, New York,
SHERIFF MICHAEL J. FILICETTI, in his official
capacity as Sheriff of Niagara County, New York,
and LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                            Defendants.

---

1:22-cv-2753 (MKV)

**OPINION AND ORDER
GRANTING PRELIMINARY
INJUNCTION**

MARY KAY VYSKOCIL, United States District Judge:

      For more than forty years, interest on money judgments in New York has accrued at the rate of nine percent per year. Last December, Governor Kathy Hochul signed into law the Fair Consumer Judgment Interest Act, N.Y. Leg. 2021-2022 Reg. Sess., S.5724A § 1, A6474A § 1 (the "Amendment"), which reduces the interest rate on money judgments for consumer debt to two percent per year. The Amendment applies both prospectively and retroactively to judgments unsatisfied at the time the law goes into effect at the end of this month.

      Plaintiffs, New York credit unions, are judgment creditors who, as of the beginning of April 2022, collectively are due over a million dollars in post-judgment interest on unpaid

Case 1:22-cv-02753-MKV   Document 57   Filed 04/28/22   Page 2 of 35

judgments for consumer debt. Plaintiffs challenge the retroactive applicability of the Amendment as an unconstitutional taking in violation of the Fifth Amendment, and as violative of their substantive due process rights guaranteed under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Plaintiffs seek a preliminary injunction prohibiting the Defendants, state officials in their official capacity, from implementing or enforcing the retroactive applicability of the Amendment.

After receiving briefing from all parties, on April 20, 2022, the Court held a hearing on the requested emergency relief. For the foregoing reasons, Plaintiffs' request for a preliminary injunction is denied with respect to Defendant Judge Marks, and granted with respect to the sheriff Defendants.[1]

## **BACKGROUND**

In considering a motion for a preliminary injunction, the Court may rely on affidavits, depositions, and sworn testimony. *See Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010). Federal Rule of Evidence 201 also authorizes the Court to "judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court considers at this stage the Parties' pleadings and affidavits submitted in connection with the pending motion,[2] and the New York Civil Practice Law and Rules.

_____

[1] Plaintiffs did not seek injunctive relief with respect to the Attorney General in their request for a preliminary injunction. Discussed *infra* at 9, the Court does not address the Attorney General for purposes of the present injunctive relief.

[2] Plaintiffs initiated this action by contemporaneously filing the Complaint [ECF No. 1] ("Compl."), a Proposed Order to Show Cause [ECF No. 10], and a Memorandum in Support [ECF No. 11] ("Pls. Mem."). The Memorandum in Support was accompanied by three declarations from the CEO or Manager of the Plaintiff credit unions. [ECF No. 12-1] ("Haaksma Decl."); [ECF No. 12-2] ("Zasucha Decl."); [ECF No. 12-3] ("Heim Decl."). The Sheriff Defendants opposed Plaintiff's application [ECF No. 33] ("Defs. Mem.") and filed an accompanying declaration by the Chief of the Civil Enforcement Division of the Erie County Sheriff's Office [ECF No. 33-1]

## I.        NEW YORK JUDGMENTS AND INTEREST RATES

This matter involves post-judgment interest accrued on money judgments under New York law.  Compl. ¶ 30; Pls. Mem. at 2.  The entry of judgments is governed by the New York Civil Practice Law and Rules, which provides that a "judgment is entered when, after it has been signed by the clerk, it is filed by him."  N.Y. C.P.L.R. § 5016(a).  Thereafter, the clerk of the court records the judgment in a "judgment-book," which the clerk maintains.  N.Y. C.P.L.R. § 9702(1); David D. Siegel, *New York Practice* § 418 (6th ed. 2018).  The judgment becomes enforceable at the time of entry.  *See* Siegel, *New York Practice* § 485.  The New York Civil Practice Law and Rules further provide that "[e]very money judgment shall bear interest from the date of its entry [and] [e]very order directing the payment of money which has been docketed as a judgment shall bear interest from the date of such docketing."  N.Y. C.P.L.R. § 5003.[3] Since 1981, the New York Legislature has determined that interest should accrue at nine percent per year.  *See* N.Y. C.P.L.R. § 5004; 1981 N.Y. Laws, ch. 258, § 2; Siegel, *New York Practice* § 412 ("[I]n 1981, the [interest] rate was raised to 9%, where it still stands now.").

A judgment creditor—the party to whom a money judgment is owed—can seek in a myriad different ways to enforce a judgment once entered: the judgment may be executed against the debtor's real or personal property, N.Y. C.P.L.R. §§ 5202, 5230; the debtor's income may be garnished, N.Y. C.P.L.R. § 5231; or an installation payment order may be entered by a court of competent jurisdiction, N.Y. C.P.L.R. § 5226.  The judgment creditor may pick whichever method of enforcement he or she wishes.  *See* Siegel, *New York Practice* §§ 485, 494.  Where the

---

("Grasso Decl.").  Judge Marks joined the arguments made by the Sheriff Defendants, and filed an opposition [ECF No. 43] ("Marks Opp.") and accompanying declaration [ECF No. 44] ("Marks Decl.").  Plaintiffs then filed a short reply brief in response to the Sheriff Defendants' opposition.  [ECF No. 42] ("Pls. Reply").

[3] The entry of the judgment and the docketing of the judgment are two related but distinct steps.  In the context of money judgments, "[w]hen the clerk files the judgment-roll upon entering the judgment, she must also docket the judgment" in a docket book.  Siegel, *New York Practice* § 421; *see* N.Y. C.P.L.R. §§ 5017-18.

judgment creditor elects to satisfy the debt out of the real or personal property of the debtor, an execution of the judgment must be issued.  *See* N.Y. C.P.L.R. § 5230.  That execution "may be issued from the supreme court, county court or a family court, in the county in which the judgment was first docketed, by the clerk of the court or the attorney for the judgment creditor as officer of the court".  N.Y. C.P.L.R. § 5230(b).  The execution is then issued "to the sheriffs of one or more counties of the state," who serve as enforcement officers for the courts.  *Id.*; Siegel, *New York Practice* § 495 (C.P.L.R. § 5230 "which, by its address to the 'sheriff' as the enforcement officer, manifests its preoccupation with the supreme court and the county courts, for both of which the sheriff acts as the enforcement official.").  The execution must contain, *inter alia*, "the date that the judgment or order was entered, the court in which it was entered, the amount of the judgment or order and the amount due thereon and it shall specify the names of the parties in whose favor and against whom the judgment or order was entered."  N.Y. C.P.L.R. § 5230(a).

## II.  THE AMENDMENT

On December 31, 2021, Governor Kathy Hochul signed into law the Fair Consumer Judgment Interest Act.  N.Y. Leg. 2021-2022 Reg. Sess., S5724A § 1, A6474A § 1.  That law retains the now-familiar nine percent post-judgment interest rate, except where the judgment derives from "an action arising out of a consumer debt where a natural person is a defendant."[4] Amendment § 1.  With respect to a judgment that arises out of a consumer debt action, the Amendment provides that:

> the annual rate of interest . . . shall be two per centum per annum (i) on a judgment
> or accrued claim for judgments entered on or after the effective date of the chapter

---

[4] The Amendment defines consumer debt as "any obligation or alleged obligation of any natural person to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment, including, but not limited to, a consumer credit transaction."  Amendment § 1(b).

of laws of two thousand twenty-one which amended this section, and (ii) for interest upon a judgment pursuant to section five thousand three of this article from the date of the entry of judgment on any part of a judgment entered before the effective date of the chapter of the laws . . . which amended this section that is unpaid as of such effective date.

Amendment § 1.  The Amendment specifies that its effective date is April 30, 2022.

Amendment § 7.  In sum, as of April 30, 2022, the Amendment lowers the post-judgment interest rate on consumer debt—both prospectively *and retroactively with respect to unsatisfied judgments*—from nine percent to two percent per year.

The Amendment also imposes new obligations with respect to executions and their issuances.  Following the effective date of the Amendment, an execution must state "the applicable interest rate and the date as of which the new interest rate applies if the interest rate for consumer debt . . . applies."  Amendment § 4(a).  For executions that are "ongoing"—that is, unsatisfied as of the effective date—"the judgment creditor shall issue an amended execution within sixty days of the effective date of the chapter of the laws . . . which amended this subdivision, effective as of the date of the rate change."  Amendment § 4(a).  Where the interest rate on an execution is "ongoing," the Amendment provides that "the clerk of the court of the supreme court, county court or a family court, in the county in which the judgment was first docketed, or the attorney for the judgment creditor as officer of the court, shall be authorized to issue an amended execution to the sheriffs of one or more counties of the state and shall issue an amended execution within sixty days of the effective date of the chapter of the laws . . . which amended this subdivision, effective as of the date of the rate change."  Amendment § 4(b).  Where the execution is an income execution subject to the interest rate change, the sheriff "shall [] promptly return[] to the debtor" "any money collected in excess of the judgment amount."  Amendment § 5(k).

### III.    THE PARTIES

Plaintiffs Greater Chautauqua Federal Credit Union ("GCFCU"), Boulevard Federal Credit Union ("BFCU"), Greater Niagara Federal Credit Union ("GNFCU") are credit unions located in western New York.  Compl. ¶¶ 16-18.  All Plaintiffs "offer consumer lending products including home and auto loans, and personal loans used for individual or family purposes."  Mem. at 5; Zasucha Decl. ¶¶ 6, 14; Heim Decl. ¶¶ 6, 12; Haaksma Decl. ¶¶ 6, 12.  As a result of their consumer-facing business, Plaintiffs each possess unsatisfied consumer debt judgments.  Compl. ¶¶ 16-18; Zasucha Decl. ¶ 30; Heim Decl. ¶ 29; Haaksma Decl. ¶ 30.  GCFU "has approximately 230 outstanding judgments and is owed approximately $1,300,000, of which approximately $390,000 is accrued interest."  Haaksma Decl. ¶¶ 30, 35-36.  BCFU "has approximately 115 outstanding judgments and is owed approximately $1,500,000, of which approximately $530,000 is accrued interest."  Heim Decl. ¶¶ 29, 34-35.  GNFCU "has over 110 outstanding judgments and is owed over $1,000,000, of which approximately $360,000 is accrued interest."  Zasucha Decl. ¶¶ 30, 35-36.  Plaintiffs contend that were the Amendment to go into effect, it would deny them the "significant portion of the accrued interest" on their unsatisfied judgments.  Mem. at 6; Zasucha Decl. ¶ 36; Heim Decl. ¶ 28; Haaksma Decl. ¶ 29.  Plaintiffs also believe that the Amendment would subject them to further hardship because it would force them to expend resources recalculating accrued interest, and because the lowered interest rate means "debtors will be less likely to agree to pay off the principal to avoid the higher interest."  Mem. at 7; Haaksma Decl. ¶ 44; Heim Decl. ¶ 41; Zasucha Decl. ¶ 42.

Plaintiffs assert that the Defendants, the Honorable Lawrence K. Marks, in his official capacity as Chief Administrative Judge of the New York State Courts, and Sheriffs James B. Quattrone, John C. Garcia, and Michael J. Filicetti, in their official capacity as Sheriffs of Chautauqua, Erie and Niagara counties respectively (the "Sheriff Defendants"), "will be

involved in enforcement of the Amendment." Mem. at 6; Compl. ¶¶ 19-22. According to

Plaintiffs, the Honorable Lawrence K. Marks, as an officer for the State of New York, "ensures

and promulgates policies and management procedures to enforcement agents throughout New

York." Mem. at 6. The Sheriff Defendants in turn will "ensure that judgment executions are

served on debtors," calculate the interest on the judgments "in accordance with the legal rate,"

apply payments to outstanding creditor balances, and ensure that "payments are remitted to

judgment creditors." Mem. at 6.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on April 4, 2022 by filing a complaint and

contemporaneous Proposed Order to Show Cause for a Preliminary Injunction [ECF No. 10]

seeking a preliminary injunction enjoining the effective date of the Amendment. The Court

directed Plaintiffs to serve the Defendants pursuant to the Federal Rules of Civil Procedure by

April 6, 2022, at 9:00am. [ECF No. 19]. Plaintiffs served Judge Marks by April 6, 2022, but

stated in a letter to the Court that they were "unable to serve the [Sheriff Defendants]," by

9:00am, and expected service to be completed "prior to the close of business." [ECF No. 23].

The Court then entered a further order scheduling a hearing on Plaintiffs' application for a

preliminary injunction, directing Defendants to file any opposition by noon on April 13, 2022,

and ordered Plaintiffs to serve on all Defendants a copy of the scheduling order and the materials

in support of their motion. [ECF No. 24]. Plaintiffs thereafter filed a letter stating that counsel

for the Sheriff Defendants "agreed to accept service by email and additionally executed waivers

of service as to the summons and Complaint, which have been filed by ECF." [ECF No. 31].

The Sheriff Defendants timely filed an opposition to Plaintiffs' preliminary injunction

motion. [ECF No. 33]. Judge Marks did not timely file an opposition, but belatedly filed a letter

joining in the Sheriff Defendants' opposition arguments, and requesting an extension of time to

May 16, 2022 "to submit a combined memorandum of law in opposition to the motion and in support of Judge Marks's anticipated motion to dismiss the action." [ECF Nos. 34]. The Court denied the request for an extension to May 16, 2022, which would post-date the effective date of the Amendment, but granted Judge Marks leave to file his submission in opposition. [ECF No. 37]. Thereafter, the Attorney General filed an opposition on behalf of Judge Marks with respect to Plaintiffs' application [ECF No. 43] and a declaration in support of his opposition [ECF No. 44], in which he affirmatively states that he has no authority to enforce the Amendment and is an improper party to this action.[5] Plaintiffs concurrently filed a reply to the Sheriff Defendants' opposition. [ECF No. 42].

The Court held oral argument on Plaintiffs' Motion for a Preliminary Injunction on April 20, 2022. [ECF No. 49] ("Tr."). At the hearing, the Attorney General argued on behalf of Defendant Judge Marks that he was not a proper party to this lawsuit because Judge Marks has no enforcement role with respect to the Amendment. Tr. at 25:16-27:12. The Attorney General also appeared through separate counsel as a non-party and reiterated that she would seek to intervene in this action if it were not dismissed at this stage. Tr. at 44:6-24. As they had in their written submission, [ECF No. 33], the Sheriff Defendants initially argued at the hearing against injunctive relief, *see* Tr. at 31:12-16, 33:12-14, but later clarified that they do not, in fact, oppose any injunction and would indeed benefit if one were to be entered because it would (in their view) indemnify them. Tr. at 31:12-13, 40:13-21 ("I would not refuse the injunction. . . . [T]o the extent there is an injunction, we're probably the party that walks away the happiest."). The

---

[5] In the opposition on behalf of Judge Marks, the Attorney General noted that, if the Court did not dismiss the case at this stage, she would "move to intervene in this action to defend the Act against Plaintiffs' constitutional challenge." Marks Opp. at 1 n.1.

Sheriff Defendants did, however. voice concerns about notice to the sheriffs in the other 59 counties of New York, who are not parties to this action.  Tr. at 38:6-11.

After the hearing, Plaintiffs filed an amended complaint [ECF No. 47], which added the Attorney General of the State of New York as a defendant.  The Attorney General's time to respond has not yet run.  In the interim, the Attorney General filed a letter arguing that she was not a proper party to the suit, and that Plaintiffs do not have a likelihood of success on the merits of their Takings Clause claim.  [ECF No. 53].  Plaintiffs responded to the Attorney General's letter, arguing that she is a proper party and that she could be enjoined from enforcing the Amendment on Plaintiffs' current application.  [ECF No. 54].

Because the pending Motion for a Preliminary Injunction, predating the amended complaint, does not seek relief against the Attorney General, the Court does not consider at this time whether she is a proper party or whether injunctive relief is appropriate with respect to her. In determining whether a preliminary injunction is warranted, the Court considers, among other factors, the balance of the equities with respect to the parties before the Court.  *See Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020).  The Amendment will go into effect at the end of this month.  Given such imminency, the Court can consider the case with respect to the parties before the Court at the time the injunction was sought.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  To "obtain a preliminary injunction against governmental action taken pursuant to a statute, the movant has to demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction.  The movant also must show that the balance of equities tips in his favor."  *Yang*, 960 F.3d at 127 (internal quotation marks and

alterations omitted).  Where, as here, "governmental policies [are] implemented through legislation or regulations developed through presumptively reasoned democratic processes" those policies "are entitled to a higher degree of deference and should not be enjoined lightly." *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (citation omitted).  Therefore, to show a "likelihood of success" Plaintiffs "must establish a clear or substantial likelihood of success on the merits."  *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (internal quotation marks omitted).

## DISCUSSION

At the preliminary injunction hearing, the Court raised with the Parties possible issues with respect to sovereign immunity.  The Sheriff Defendants also argue in their opposition that the alleged injury is not fairly traceable to them or to Judge Marks.  In connection with his opposition, Judge Marks submitted evidence that he has no role with respect to the challenged Amendment.  *See* Marks Decl. ¶ ("I have neither responsibility for, nor the authority over, implementation or enforcement of the Act"); Marks Decl. ¶ 10 ("Neither the clerks nor sheriffs are under my administrative control or direction with respect to these matters").  The Court will first address sovereign immunity and standing because those issues implicate the Court's subject matter jurisdiction.  Thereafter, the Court analyzes whether a preliminary injunction is warranted.

## I.      SOVEREIGN IMMUNITY DOES NOT BAR THIS SUIT WITH RESPECT TO THE SHERIFF DEFENDANTS

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  In essence, the Eleventh Amendment "effectively places suits by private

parties against states outside the ambit of Article III of the Constitution," *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004), unless Congress has abrogated a state's sovereign immunity or that immunity has been waived by the state.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983. That provision provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  It is settled law that New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate immunity in enacting 42 U.S.C. § 1983.  *See Rodriguez v. New York*, 2017 WL 8777374, at *2 (S.D.N.Y. Nov. 28, 2017) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).

However, under the so-called *Ex parte Young* doctrine, a plaintiff's claim may proceed against state officials, notwithstanding the Eleventh Amendment, when he, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotation marks and citations omitted); *Ex parte Young*, 209 U.S. 123 (1908).

The *Ex parte Young* doctrine applies to this suit against Judge Marks and the Sheriff Defendants in their official capacity.  Plaintiffs seek prospective relief in the form of an injunction, preventing the Defendants (state officials) from enforcing the Amendment.  *See Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("[S]tate officers are not immune from prospective injunctive relief.").  Plaintiffs sufficiently seek to challenge what they characterize as a threatened violation of federal law—an unconstitutional taking of their vested interest in accrued

post-judgment interest—currently signed into law and effective at the end of this month, *i.e.*, the Amendment.  *KM Enters. v. McDonald*, 2012 WL 4472010, at *10 (E.D.N.Y. Sept. 25, 2012), ("Certainly, the requirement of an ongoing and continuous violation of federal law need not mean that the Commissioner be in the midst of a current misapplication of federal law against the particular plaintiff initiating the suit.  Such a decree would essentially render *Ex parte Young* a nullity."), *aff'd*, 518 F. App'x 12 (2d Cir. 2013); *Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir. 1996) ("[T]he [*Ex parte Young*] exception permits relief against state officials only when there is an ongoing *or threatened* violation of federal law.") (emphasis added); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3566 (3d ed. 2008) ("[T]he best explanation of *Ex parte Young* and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who *are threatening* to violate the federal Constitution and laws.") (emphasis added).

The *Ex parte Young* doctrine requires that the state officials sued have some nexus to the challenged violation of federal law, such as a duty to enforce the statute.  *See Ex parte Young*, 209 U.S. at 156-57 (the defendant state officer "must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party."); *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (en banc).  "That a government official must have a connection to the allegedly unconstitutional government act makes sense, for [a]n injunction may issue only in circumstances where the state official has the authority to perform the required act."  *Nassau & Suffolk Cnty. Taxi Owners Ass'n v. New York*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018).  But "it is not necessary that the officer's enforcement duties be noted in the act," *In re Dairy Meat Convenience Stores, Inc.*, 411 F.3d 367, 373 (2d Cir. 2005).  Rather, the connection "can be

found implicitly elsewhere in the laws of the state . . . so long as those duties have the same

effect as a special charge in the [challenged] statute." *Okpalobi*, 244 F.3d at 419 (quotation

omitted); *see also Ex parte Young*, 209 U.S. at 158-59 (proper suit requires a "special relation"

between the defendant and enforcement of the challenged statute).  An officer's "significant

[oversight] responsibilities" may "create the requisite connection to the illegal act."  *In re Dairy

Meat Convenience Stores, Inc.*, 411 F.3d at 373.

   The Sheriff Defendants are clearly connected to the enforcement of the Amendment for

purposes of the *Ex parte Young* doctrine.  For example, the Amendment requires that "if a

judgment creditor issues an amended execution . . . because the applicable interest rate

changes . . . the sheriff shall serve a copy of the income execution within forty-five days after an

income execution is delivered to the sheriff."  Amendment § 5(j).  The Amendment further states

that it is "the duty of the sheriff to whom such income execution shall be delivered" to "account

for and pay over to the person entitled to all monies collected thereon."  Amendment § 5(k).

That same provision also requires that "if a judgment creditor issues an amended

execution . . . because the applicable interest rate changes . . . any money collected in excess of

the judgment amount shall be promptly returned to the debtor [by the sheriff]."  *Id.*  Indeed, the

Sheriff Defendants' own opposition underscores their involvement with the enforcement of the

Amendment because the sheriffs "carry out the statute in terms of the interest rate as dictated by

the Legislature."  Defs. Mem. at 18.  The Sheriff Defendants further agreed at the hearing on

Plaintiff's motion that they have a duty to enforce the Amendment.  *See* Tr. at 31:3-6 (the Sheriff

Defendants take houses, businesses, income, and homes on behalf of judgment creditors).

   The Court is not convinced on the record before it for purposes of this motion, however,

that the Honorable Lawrence K. Marks, in his official capacity as Chief Administrative Judge for

the New York State Unified Court System, has the requisite connection to the Amendment for the *Ex parte Young* doctrine to apply.  Plaintiffs argue without support that Judge Marks "ensures and promulgates policies and management procedures to enforcement agents and clerks throughout New York, including policies and procedures concerning the entering and execution of judgments."  Pls. Mem. at 6.  Plaintiffs therefore contend generally that because he "oversees the day-to-day administration and operation of the courts [he] therefore has overall responsibility for ensuring that the Amendment is implemented according to law."  Pls. Mem. at 8.

By its plain language, the Amendment does not require anything from Judge Marks.  The Amendment contemplates that the state court clerks will, *inter alia*, "issue an amended execution to the sheriffs of one or more counties of the state and shall issue an amended execution within sixty days of the effective date of the chapter of the laws . . . which amended this subdivision, effective as of the date of the rate change."  Amendment § 4(b).  In opposing Plaintiffs' motion, Judge Marks filed an affidavit stating in no uncertain terms that he "ha[s] neither responsibility for, nor the authority over, implementation or enforcement of the [Amendment]," that "[n]either the clerks nor sheriffs are under [his] administrative control or direction," and that as he is "not a proper party to the action, as there is no relief that the Court might grant, should plaintiff prevail, that [he] would be authorized under New York State law to provide."  Marks Decl. ¶¶ 6, 9-12.

At the hearing, Plaintiffs argued that Judge Marks has a general responsibility to enforce the Amendment pursuant to New York Codes, Rules, and Regulations Title 22 Section 80.1.  Tr. 8:4-12.  That section states, in relevant part, that the "Chief Administrator [of the Courts] enforce and supervise the execution of the standards and administrative policies established, approved and promulgated pursuant to article VI, section 28(c) of the Constitution."  But such a generalized obligation to "supervise" is insufficient for purposes of the *Ex parte Young* doctrine

14

to apply.  *See McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.*, 2013 WL 4780954, at

*8 (E.D.N.Y. Sept. 5, 2013) ("While plaintiff has stated that the [state official] is responsible for

the overall operation of [the state agency], this allegation, standing alone, is insufficient to

demonstrate that the [state official] had a direct connection to, or responsibility for, the alleged

illegal action") (internal quotation marks, alteration, and citation omitted).

    Moreover, the *Ex parte Young* doctrine requires "both a particular duty to enforce the

statute in question and *a demonstrated willingness to exercise that duty*."  *Citizens Union of City

of New York v. Attorney General*, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (emphasis

altered) (quoting *Kelly v. New York State Civil Serv. Comm'n*, 2015 WL 861744, at *3 (S.D.N.Y.

2016), *aff'd sub nom.* 632 F. App'x 17 (2d Cir. 2016)).  At this stage, Plaintiffs have not

identified anything in the record indicating that—to the extent Judge Marks actually *has* the

power to enforce the Amendment—he has demonstrated a willingness to exercise that duty.

Accordingly, the Court cannot grant any injunctive relief to Plaintiffs with respect to Judge

Marks because, on the present record, he is not a proper party against whom injunctive relief

may be granted.  Because injunction relief against Judge Marks is not proper on the present

record, the Motion is denied with respect to Defendant Judge Marks.

## II.    PLAINTIFFS HAVE STANDING TO SUE THE SHERIFF DEFENDANTS

    "To establish standing under Article III of the Constitution, a plaintiff must demonstrate

(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or

imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be

redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618

(2020).  To have standing to obtain injunctive and related declaratory relief from the

Government, a plaintiff "must show a likelihood that he will be injured in the future" by the

conduct he seeks to enjoin.  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).  The Sheriff

15

Defendants argue that the injury asserted by the Plaintiffs is not fairly traceable to them.  Defs. Mem. at 18.  "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury," either direct or indirect.  *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013).  The traceability requirement is a "lesser burden" than proximate cause.  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 n.8 (2d Cir. 2003).  "[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision."  *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007); *see Okpalobi*, 244 F.3d at 426.  For substantively the reasons the Court identifies in the context of the Eleventh Amendment, Plaintiffs' injury is fairly traceable to the Sheriff Defendants: as they concede, the Sheriff Defendants are charged with dispositive roles in enforcing judgments, Defs. Mem. at 18, Tr. at 31:3-6, and therefore enforcing the Amendment.  *See Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006) (traceability satisfied where state officials had "some connection with the enforcement" of a state law for purposes *Ex parte Young*).[6]  As a result, Plaintiffs have standing to sue the Sheriff Defendants.

## III.    THE JUDGMENT DEBTORS ARE NOT NECESSARY PARTIES

As a further preliminary matter, the Sheriff Defendants argue that this action should be dismissed because "a remedy cannot be granted to the Plaintiffs without the joinder of the judgment debtors."  Defs. Mem. at 15.  If necessary parties are not joined to this action, the Court may not reach the merits or grant the requested preliminary injunction.  *See Sunset*

---

[6] Because Judge Marks has no nexus to the Amendment or its enforcement, no injury is fairly traceable to Judge Marks on the current record.  *See Rothstein*, 708 F.3d at 91.

*Homeowners Ass'n v. Difrancesco*, 386 F. Supp. 3d 299, 306 (W.D.N.Y. 2019) (collecting cases).

Federal Rule of Civil Procedure 19(a) governs the "required joinder" of parties. Fed. R. Civ. P. 19.  Joinder of a party under Rule 19 entails a two-step analysis, pursuant to which the Court considers (1) whether the absent party belongs in the suit, *i.e.*, qualifies as a "necessary" party under Rule 19(a), and (2) whether joinder of the absent party is feasible and will not deprive the Court of subject matter jurisdiction. *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000).

Rule 19(a) establishes two broad categories of a "required party."  First, under Rule 19(a)(1)(A), a party is required if "in that person's absence, the court cannot accord complete relief among existing parties."  Second, under Rule 19(a)(1)(B), a party is required if:

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Without further detail, the Sheriff Defendants argue that "joinder of the judgment debtors may not be possible" and therefore "dismissal may be appropriate."  Defs. Mem. at 16; *but see* Defs. Mem. at 17 (judgment creditors could be joined as defendant class).  Defendants then argue that the judgment debtors are necessary parties because enjoining the Amendment would deprive judgment debtors "the benefit of the Act," because they would "have to pay the [nine-percent post-judgment interest]."  Defs. Mem. at 15-16.

As an initial matter here, joinder to this action of any party would not deprive the Court of subject matter jurisdiction because this controversy is before the Court by virtue of its federal question jurisdiction.  *See* Compl. ¶ 13.  Moreover, the Sheriff Defendants ignore that the judgment debtors are presently obligated, under existing law, to pay the principal and accrued

interest on valid and enforceable judgments.  The change in legislation would adjust that obligation retroactively, but it has not yet been adjusted.

The Court concludes that the judgment debtors are not "necessary" parties to this action. The judgment debtors are not necessary parties under Rule 19(a)(1) because, even in their absence, the Court could accord complete relief to the Plaintiffs by enjoining the Sheriff Defendants from enforcing the Amendment during the pendency of this litigation.  And, "Rule 19 does not require that a plaintiff bringing an urgent preliminary injunction motion that implicates the Constitution include every similarly situated person as a party."  *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 39 (S.D.N.Y. 2020).  Moreover, where joinder is not feasible, as the Sheriff Defendants appear to suggest, joinder is a matter of judicial discretion, and concerns of equity may militate in favor of proceeding in the absence of an otherwise necessary party.  *See Walker v. City of Waterbury*, 253 F. App'x 58, 62 (2d Cir. 2007) ("District courts are afforded substantial discretion in weighing the Rule 19(b) factors and in determining how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute."); *Gallagher*, 477 F. Supp. 3d at 39 ("Rule 19 of the Federal Rules of Civil Procedure vests the court with wide discretion in deciding whether to proceed in the absence of necessary parties and equity would demand that the Court proceed in their absence.") (internal quotation marks omitted).  Because the judgment debtors are not necessary parties the absence of whom requires dismissal, the Court turns to the preliminary injunction factors.

## IV.   PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

Plaintiffs contend that the injunction factors support the issuance of a preliminary injunction given the clear likelihood of success on the merits, the irreparable harm they would suffer if the Amendment were not enjoined, and because Defendants would not be harmed by

any injunctive relief.  *See* Pls. Mem. at 9, 18, 23.  The Sheriff Defendants argue that Plaintiffs'
alleged loss is compensable by money damages and that an adequate remedy at state law exists,
and that the balance of equities and public interest factors weigh in their favor.  Defs. Mem. at 9-
11, 13.  On balance, the Court concludes that Plaintiffs are entitled to a preliminary injunction
refraining the Sheriff Defendants from enforcing the Amendment.

## A.      *Likelihood of Success on the Merits*

Plaintiffs challenge the retroactive application of the Amendment on two distinct
theories: the first, that the retroactive effect of the Amendment constitutes an impermissible
taking under the Fifth Amendment without just compensation; the second, that the retroactive
effect of the Amendment violates Plaintiffs' Fourteenth Amendment rights.  Pls. Mem. at 10, 17,
19.  Both challenges are brought pursuant to 42 U.S.C. § 1983 ("Section 1983").  Section 1983
"is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere
conferred by those parts of the United States Constitution and federal statutes that it describes."
*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.
2010).  To state a claim under Section 1983, Plaintiffs must establish both that the Sheriff
Defendants "deprived [them] of a right 'secured by the Constitution or laws of the United
States'" and "that they did so 'under the color of state law.'"  *Giordano v. City of New York*, 274
F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50
(1999)).

### 1.      *The Fifth Amendment Takings Clause Claim*

The Takings Clause of the Fifth Amendment, which is made applicable to New York
through the Fourteenth Amendment, *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005),
provides that "private property [shall not] be taken for public use, without just compensation."
U.S. Const. amend. V.  Plaintiffs here challenge only the retroactive application of the interest

rate change to unsatisfied judgments, not the prospective change.  The Court must first determine whether, for purposes of the Takings Clause, Plaintiffs have a protected property interest in the vested post-judgment interest they would lose were the Amendment to go into effect.  *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 261 (2d Cir. 2014).  It is black letter law that if the Plaintiffs do not have a protected property interest, the Amendment cannot work to take an interest that does not exist.  *Id.*

### a.      Post-Judgment Interest is a Constitutionally Protected Property Interest

Plaintiffs have chosen to avail themselves of the federal courts, cloaking this action challenging a state law in federal Constitutional garb.  Thus, whether Plaintiffs—in this federal action—have a protected property interest is a two-step inquiry.  *See 1256 Hertel Ave. Assocs., LLC*, 761 F.3d at 262.  First, because the United States Constitution "protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'"  *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  Second, though the property interest springs from state law, "*federal constitutional law* determines whether the interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."  *1256 Hertel Ave. Assocs., LLC*, 761 F.3d at 262 (emphasis in original) (quoting *Town v. Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 756-57 (2005)).  Certainly, Plaintiffs' money judgments—the principal—are vested rights created by state law that are entitled to Constitutional protection.  *Benjamin v. Jacobson*, 124 F.3d 162, 176 (2d Cir. 1997) ("It is well-settled that a final money judgment creates a 'vested right' and hence a constitutionally protected property interest.").  But the Amendment does not work to affect Plaintiffs' principal.  The relevant question for purposes of Plaintiffs' Takings Clause claim is

therefore whether New York law categorizes post-judgment interest as a property right, and if so, whether the Constitution would protect that property interest.  The Court agrees with Plaintiffs that post-judgment interest constitutes a protected property interest for purposes of the Fifth and Fourteenth Amendments.  *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d at 262.

New York state law creates a property right in post-judgment interest.  "Interest [for judgments pursuant to N.Y. C.P.L.R. § 5003] attaches uniformly to all money obligations once reduced to verdict or judgment" and "runs on the judgment until it is satisfied."  Siegel, *New York Practice* § 411.  "[T]he common law rule, well established in New York and elsewhere, [is] that interest follows principal and therefore is the property of the owner of the principal."  *Rai v. WB Imico Lexington Fee, LLC*, 802 F.3d 353, 369 (2d Cir. 2015) (internal quotation marks omitted) (citing New York law).

The Constitution protects Plaintiffs' property right in accrued post-judgment interest.  "The rule that 'interest follows principal' has been established under English common law since at least the mid-1700's."  *See Phillips*, 524 U.S. at 165.; *cf. Webb's Fabulous Pharmacies, Inc. v. Backwith*, 449 U.S. 155, 164 (1980) (the "earnings of a fund are incidents of ownership of the fund itself and are property just as the fund is property.").  For example, in *Phillips*, the Supreme Court determined that interest earned on client funds held in an Interest on Lawyers Trust Account ("IOLTA") was "private property" of the owner of the principal for purposes of the Takings Clause.  *Id.* at 160.  Following New York authority and the logic of *Phillips*, the Court concludes that post-judgment interest is a protected property interest for purposes of the Fifth and Fourteenth Amendment.  *See Phillips*, 524 U.S. at 165; *Rai*, 802 F.3d at 369.

### b.      *The Amendment Constitutes a Regulatory Taking*

The Constitutional prohibition on takings for public use without just compensation

extends to two distinct types of takings: physical takings and regulatory takings.  *Lingle*, 544

U.S. at 537; *1256 Hertel Ave. Assocs., LLC*, 761 F.3d at 263 ("The Supreme Court has

recognized two branches of Takings Clause cases: physical takings and regulatory takings.").

Physical takings involve "the direct government appropriation or physical invasion of private

property."  *Lingle*, 544 U.S. at 537.  A physical taking, for purposes of the Fifth Amendment,

"occurs when there is either a condemnation or a physical appropriation of property."  *1256

Hertel Ave. Assocs.*, 761 F.3d at 263.  Regulatory takings, on the other hand, involve

"government regulation of private property [that is] . . . so onerous that its effect is tantamount to

a direct appropriation or ouster."  *Lingle*, 544 U.S. at 537.  Thus, "while property may be

regulated to a certain extent, if regulation goes too far it will be recognized as a taking."  *Id.*

(internal quotation marks omitted) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415

(1922)); *1256 Hertel Ave. Assocs., LLC*, 761 F.3d at 263.

Plaintiffs' principal argument is that the legislative retroactive reduction in post-judgment

interest is a physical taking.  Pls. Mem. at 11; *see* Pls. Mem. at 16 (arguing, in the alternative, the

"Amendment's effect on Plaintiffs also constitutes a regulatory taking of private property

without just compensation"); Tr. at 10:3-5.  The Sheriff Defendants do not address at all whether

any purported taking by the Amendment should be analyzed as a physical or regulatory taking.

Upon review, the Court concludes that, to the extent the Amendment causes any taking, the

taking would be regulatory in nature.  The Amendment at-issue here, which ministerially reduces

post-judgment interest not only prospectively but also retroactively from nine to two percent,

"does not present the 'classi[c] taking' in which the government directly appropriates private

property for its own use." *E. Enters. v. Apfel*, 524 U.S. 498, 522 (1998).  Accordingly, any taking effectuated by the retroactive application of the Amendment would be regulatory in nature.  *See 1256 Hertel Ave. Assocs.*, 761 F.3d at 263-64.

In most cases, a court determines whether a regulatory action is the functional equivalent of a classic taking using "essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) (citing factors set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)) (the "*Penn Central* factors").  The Supreme Court has also identified another type of regulatory action which is treated as a categorical, or *per se*, taking, without the need to engage in a *Penn Central* inquiry: a total regulatory taking.  A total regulatory taking occurs under "narrow" circumstances when "regulations . . . completely deprive an owner of all economically beneficial us[e] of her property."  *Lingle*, 544 U.S. at 538 (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)).  Plaintiffs contend that "[b]ecause the Amendment appropriates the entirety of the interest that accrued over two percent, it is unnecessary to apply the *Penn Central* factors."  Pls. Mem. at 11; *but see* Pls. Mem. at 16 (citing *Penn Central* factors in the alternative).

### c.    *The Categorical or Per Se Takings Rule Does Not Apply*

Plaintiffs cite the Supreme Court's decision in *Brown v. Legal Foundation of Washington*, 538 U.S. 216 (2003) urging that the Court apply a *per se* takings analysis here. That case, the progeny of *Phillips*, held that a "law that requires [] the interest on [client funds deposited in an IOLTA account to] be transferred to a different owner for a legitimate public use . . . could be a *per se* taking requiring the payment of 'just compensation' to the client." *Brown*, 538 U.S. at 240.  The issue before the Court here, however, is different in kind than the

issue presented in *Brown*.  The Amendment does not require that the reduction in interest be *transferred* to a different owner—or indeed *anyone*.  Instead, the previously accrued interest is simply reduced, retroactively, by operation of law.

Moreover, the Court is unconvinced by Plaintiffs' contention that the Amendment here "denies ***all*** economically beneficial or productive use of" their property, a requisite for the categorical or *per se* rule to apply.  *See* Pls. Mem. at 11 (emphasis added) (citing *Lucas*).  While Plaintiffs would be deprived of seven percent of the interest accrued through the effective date of the Amendment, Plaintiffs retain their property rights in the principal and the two percent interest that would be unaffected by the Amendment.  In other words, Plaintiffs retain *some* economically beneficial or productive use of their property—regardless of whether the property is characterized as the judgment, the principal, or the post-judgment interest.  *See Tahoe-Sierra*, 535 U.S. at 330 (a plaintiff must show no productive or economically beneficial use of his or her property to sustain a categorical regulatory Takings Clause claim); *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) ("Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in [*Penn Central*]") (internal quotation marks omitted).  Plaintiffs tacitly recognize this distinction but simply gloss over its importance.  *See* Pls. Mem. at 11 ("Because the Amendment appropriates the entirety of the interest that accrued *over two percent*, it is unnecessary to apply the Penn Central factors") (emphasis added).

There is also authority which undermines Plaintiffs' contention that the categorical approach applies to property beyond real property.  Indeed, the Supreme Court's "total takings" jurisprudence, and the application of it by the Circuits, has repeatedly highlighted that it applies to deprivations of "land."  *See Lucas*, 505 U.S. at 1016 ("categorical treatment [is] appropriate []

where regulation denies all economically beneficial or productive use of land"); *Horne v. Dep't of Agric.*, 576 U.S. 351, 360-362 (2015) (*Lucas* distinguishes between real and personal property); *Tahoe-Sierra Pres. Council*, 535 U.S. at 330 ("The categorical rule that we applied in *Lucas* states that compensation is required when a regulation deprives an owner of 'all economically beneficial uses' of his land"); *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) ("Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred" depending on the application of the *Penn Central* factors); *Md. Shall Issue v. Hogan*, 963 F.3d 356, 364 n.4 (4th Cir. 2020) ("[T]he *per se* regulatory taking in *Lucas* applies only to real property"); *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151 (Fed. Cir. 2014) ("The Supreme Court has mainly applied the categorical test to regulatory takings of real property."); *1206 Hertel Ave. Assocs., LLC*, 761 F.3d at 264 ("The cases in which the Supreme Court has applied *Lucas'* total takings rule have involved real property.").

The Second Circuit's decision in *1256 Hertel Avenue Associations, LLC* is informative. In that case, the lien holder had obtained a judgment lien in the amount of $4,682 against the debtor's home.  761 F.3d at 255.  After the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, the debtor sought to avoid the lien under New York's homestead exemption.  *Id.*  That exemption "protects a debtor's principal residence from being used to satisfy a creditor's judgment up to a statutorily defined maximum value."  *Id.*  When the lien was perfected, the maximum value was limited to $10,000.  *Id.*  By the time the petition was filed, the exemption's maximum value had increased to $50,000.  *Id.* at 255-56.  While the petition was pending, intervening New York law increased the exemption to $75,000.  *Id.*  The lien holder urged the bankruptcy court to limit the exception to the maximum value of $10,000 in

place at the time the lien was perfected, rather than the subsequently-increased $75,000

exception amount, arguing that the legislation's effect of limiting his ability to collect on the

judgment lien would constitute an unconstitutional taking in violation of the Fifth Amendment.

In particular, the lien holder argued that the amended law "deprived it of all economic use of its

judgment lien . . . and that the Court should simply find a *per se* taking under *Lucas* and forgo a

detailed analysis of the *Penn Central* factors."  *Id.* at 264.  While the Second Circuit ultimately

held that no taking occurred because the government "merely adjusted [New York's] long-

standing statutory protection of debtors' homesteads to account for modern home values," the

Second Circuit expressed serious doubt that the total takings rule "should be applied to purported

takings of other types of property [other than real property], such as intellectual property,

personal property, or a security interest."  *Id.* at 264-265.

In sum, the categorical rule is inapposite to this case, and the Court therefore turns to the

*Penn Central* factors to determine whether Plaintiffs are likely to succeed on the merits of their

Takings Clause claim.

### d.    The Penn Central Factors Weigh in Favor of Plaintiffs' Takings Clause Claim

The Supreme Court in *Penn Central Transportation Company* set forth three factors to

guide the Court's inquiry as to whether governmental regulation rises to the level of a regulatory

taking: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which

the regulation has interfered with distinct investment-backed expectations," and (3) "the

character of the governmental action."  *Penn Central Transp. Co. v. New York City*, 438 U.S.

104, 124 (1978).  "[T]he *Penn Central* inquiry turns in large part, albeit not exclusively, upon the

magnitude of a regulation's economic impact and the degree to which it interferes with

legitimate property interests." *Lingle*, 544 U.S. at 540.  In applying the *Penn Central* factors, the

ultimate question for the Court is "whether justice and fairness require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979) (internal quotation marks omitted).  The Sheriff Defendants do not address the *Penn Central* factors in their opposition.

With respect to the first *Penn Central* factor, Plaintiffs argue that the economic impact of the Amendment will be severe.  They argue that, as a result of the Amendment as applied retroactively, they "will lose hundreds of thousands of dollars in expected income" and will be "forced to make adjustments to their lending practices or otherwise reduce services to the community," such as increasing interest rates or offering less loans.  Pls. Mem. at 16-17; Heim Decl. ¶¶ 42-45; Haaksma Decl. ¶¶ 45-47; Zasucha Decl. ¶¶ 43-46.

With respect to the second factor, Plaintiffs contend that, given the long-standing interest rate in New York, they "had every reason to expect that they would receive the accrued interest on their judgments"—in place for over forty years—and had made investment and business decisions based on that expectation.  Pls. Mem. at 16-17; Heim Decl. ¶¶ 42-45; Haaksma Decl. ¶¶ 45-47; Zasucha Decl. ¶¶ 43-46.  As a result, Plaintiffs argue that they "are being forced by the Government to bear a significant economic impact for the ostensible benefit of a portion of the public."  Pls. Mem. at 16.

Finally, the third factor under *Penn Central* instructs the Court to assess the "character of the taking."  Under that factor, "a taking may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."  *Penn Central*, 438 U.S. at 124 (internal citations omitted).  As discussed

above, the Amendment does not result in a *physical* occupation of property, and instead operates to adjust the interest rate accrued on judgments, to promote what the New York legislature has determined to be the common good.  Here, the character of the challenged action, *i.e.* the Amendment, weighs against Plaintiffs because the Amendment is akin to a "public program adjusting the benefits and burdens of economic life to promote the common good."  *Penn Central*, 438 U.S. at 124.

The Court concludes that the first and second *Penn Central* factors clearly weigh in favor of the Plaintiffs at this stage.  And while the third factor weighs in favor of the Defendants, the Court balances that factor against the other two.  On balance, the Court concludes that Plaintiffs have demonstrated a likelihood of success on the merits of their Takings Clause claim.

### 2.      *The Fourteenth Amendment Substantive Due Process Claim*

The Due Process Clause of the Fourteenth Amendment "embodies a substantive component that protects against certain government actions regardless of the fairness of the procedures used to implement them."  *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (internal citation omitted).  In essence, substantive due process protects against government action that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised."  *Cunney v. Bd. of Trustees of Village of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011) (internal citation omitted).  In the context of retroactive legislation, the Constitutional due process requirement "is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose."  *Pension Benefit Guaranty Corporation v R. A. Gray & Co.*, 467 U.S. 717, 730 (1984).  Indeed, "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations."  *Id.* at 729.

The Sheriff Defendants do not address Plaintiffs' substantive due process claim in their opposition papers.  Plaintiffs argue that the Amendment violates their substantive due process rights because the retroactive application of the law has no limit, the change in law upsets forty years of expectations, and lenders will respond to the law by reducing services and products for consumers (thereby harming them).  Pls. Mem. at 18-19.

Plaintiffs also appear to argue that the Amendment violates the Fourteenth Amendment because it is impermissibly vague.  Pls. Mem. at 19 (the statute is "hopelessly vague").  A statute may be impermissibly vague where "its commands are so vague as really to be no rule or standard at all."  *Ass'n of Int'l Auto Mfrs. v. Abrams*, 84 F.3d 602, 614 (2d Cir. 1996) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).

The legal standards governing Plaintiffs' substantive due process clause claims pose difficult burdens to establish a clear likelihood of success on the merits.  However, the Court need not address Plaintiffs' substantive due process claim because the Court has determined that Plaintiffs have shown a clear likelihood of success on their Takings Clause claim, and the relief sought is the same under either claim.  *See E. Enters.*, 524 U.S. at 538 (where court determined Takings Clause violation occurred, it "need not" address due process claim.); *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents.").

## B.    *Irreparable Harm*

The Second Circuit has made clear that a showing of irreparable harm is "the single most important prerequisite for the issuance" of injunctive relief.  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *see also* Wright & Miller, *Federal Practice & Procedure* § 2951 ("A demonstration of irreparable injury by the party seeking relief is an

essential prerequisite to a temporary restraining order.").  "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent."  *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citing *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).  Irreparable harm potentially follows only where money damages are unavailable to redress an injury.  *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020) ("Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." (internal citation omitted)).

The Court concludes that Plaintiffs have clearly established irreparable harm.  An alleged violation of a Constitutional right can "trigger[] a finding of irreparable harm."  *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996); *Floyd v. City of New York¸* 959 F. Supp. 2d 691, 696 (S.D.N.Y. 2013) ("It is well-established that a violation of one's constitutional rights constitutes irreparable harm.").  Plaintiffs seek prospective injunctive relief under Section 1983.  It is settled law that a plaintiff suing a state official in his or her official capacity under Section 1983, such as Plaintiffs here, may be entitled to injunctive relief—but not money damages.  *Will v. Michigan Dep't of State Police* 491 U.S. 58, 71 n.10 (1989); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984) ("[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may . . . not . . . award[] retroactive monetary relief"); *Entergy Nuclear Vermont Yankee, LLC v. Shumlin¸*733 F.3d 393, 423 (2d Cir. 2013) (irreparable harm shown where "Entergy would be unable to recover monetary damages from Vermont because of the Eleventh Amendment"); *Ex Parte Young*, 209 U.S. 123 (1908) (Eleventh

Amendment bars suits against a state except where state officer in official capacity is sued and plaintiff seeks prospective injunctive relief).

As such, the unconstitutional deprivation of Plaintiffs' accrued post-judgment interest would appear to be uncompensable by money damages.  There is clear tension between the Takings Clause (which contemplates "just compensation") and the Eleventh Amendment (which bars money damage suits against state officials).  While the Second Circuit has never squarely answered whether the Eleventh Amendment would bar compensation claims under the Takings Clause, the "overwhelming weight of authority" suggests that "sovereign immunity trumps the Takings Clause." *Cmty. Hous. Improvement Program v. City of New York*, 492 F. Supp. 3d 33, 40 (E.D.N.Y. 2020); *Morabito v. New York*, 803 F. App'x 463, 464-65 (2d Cir. 2020) (affirming decision that Eleventh Amendment bars takings claim); *Bldg & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2021 U.S. Dist. LEXIS, 174535, at *26-27 (S.D.N.Y. Sept. 14, 2021) (Eleventh Amendment prevails over Takings Clause claim) (collecting cases).  In light of the foregoing, Plaintiffs make a sufficient showing of irreparable harm both because they show a likelihood of success on their Takings Clause claim, and because money damages would be unavailable to Plaintiffs in this matter.

The Sheriff Defendants argue that there is no irreparable harm here because New York state law provides an adequate remedy under New York Civil Practice Law and Rules Section 5240.  Defs. Mem. at 11.  That provision provides that a "court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."  That provision provides for so-called "protective orders in the enforcement of judgments."  Siegel, *New York Practice* § 522.  According to the Sheriff

Defendants, CPLR 5240 allows a "state court to modify all of the judgments enforced at 2% instead of 9% during the pendency of this action." Defs. Mem. at 12.

The Court is unconvinced that CPLR 5240 provides an adequate remedy for two reasons. First, by its plain language, CPLR 5240 is discretionary. *See* N.Y. C.P.L.R. § 5240 (stating a court "*may* . . . make an order . . . ."). Second, the Sheriff Defendants cite no case for the proposition that CPLR 5240 permits a judgment creditor to recover more interest than that assessed at the time the judgment is satisfied. The Sheriff Defendants cite the recent decision by the New York Court of Appeals in *Plymouth Venture Partners* in support of their contention that the CPLR provision is available "even after the assets have been transferred to the judgment creditor." Mem. at 12 (quoting 2021 N.Y. LEXIS 2577, *12 (2021)). But, as the Court of Appeals pointed out, "CPLR 5240 grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts." *Id.* at *11. The purpose of CPLR 5240 is to "to aid a party inequitably burdened by the use of enforcement procedures by his adversary and to allow him an opportunity to either meet his legal obligation or postpone the enforcement of a judgment until such time that its enforcement is more properly sought." *Kolortron Sys., Inc. v. Casey*, 500 N.Y.S.2d 36, 36 (N.Y. App. 1986) (emphasis added). *Plymouth Venture Partners* therefore does not stand for the proposition that CPLR 5240 gives judgment creditors the ability to reopen satisfied judgments to assess an increase to redress the reduction in statutory interest rate by reason of the Amendment. Indeed, if that were the case, *any* judgment creditor could seek to reopen *any* satisfied judgment if it wanted to avail itself of a change in interest rate. Further, if any now-unsatisfied judgment is satisfied during the pendency of this litigation, the judgment creditors would be forced to engage

in seriatim micro-litigation against any number of judgment debtors.  This does not seem to be consistent with the intent of the statute.

**C.**   ***The Balance of Equities and the Public Interest***

In evaluating Plaintiffs' request for injunctive relief, the Court balances "the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," in addition to "the public consequences in employing the extraordinary remedy of injunction." *Yang*, 960 F.3d at 127.

The Sheriff Defendants contend that the Amendment furthers the "public interest" insofar as it alleviates burdensome consumer debt.  Defs. Mem. at 13-14.  The Sheriff Defendants argue in support of the Amendment that by reducing the interest rate applicable (prospectively and retroactively) to consumer-debt judgments, consumers will not have to "choose between putting food on the table and paying off consumer debt."  Defs. Mem. at 14.  The Sheriff Defendants also argue that injunctive relief would place burdens on consumers which could more easily be borne by the Plaintiffs during the pendency of this litigation.  Defs. Mem. at 14.

To be sure, it is a legitimate legislative prerogative to adjust the interest rate applicable to judgments in the state of New York.  However, to do so *retroactively*, with respect to interest which has already vested under existing law, raises serious Constitutional concerns.  Because the Court concludes that the retroactive application of the Amendment constitutes a taking, the public interest prong tips in favor of the Plaintiffs.  "The Second Circuit has concluded that, where a plaintiff alleges constitutional violations, the balance of hardships tips decidedly in the plaintiff's favor." *Sajous v. Decker*, 2018 WL 2357266, at *13 (S.D.N.Y. May 2018) (citing *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984)).  Indeed, "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Isr.*, 983 F.3d at 637 (applying public interest factor).  For example, the

33

Legislature's claimed goal of alleviating consumer debt is achieved by the *prospective* portion of the Amendment—which the Plaintiffs do not challenge.  Further, and contrary to the Sheriff Defendants' arguments, any harm to the public is minimal where an injunction would do nothing more than maintain the *status quo*—in place for more than forty years—during the pendency of this litigation.

Significantly, in weighing the effect on the parties before the court of granting or withholding injunctive relief, it is noteworthy that the Sheriff Defendants stated at oral argument that they would actually benefit from the injunctive relief.  Tr. at 31:12-13, 40:13-21 ("I would not refuse the injunction. . . . [T]o the extent there is an injunction, we're probably the party that walks away the happiest.").

## V.    A BOND IS NOT NECESSARY IN THIS CASE

Pursuant to Federal Rule of Civil Procedure 65(a), the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  It is unclear what damage Defendants—or indeed judgment debtors—would suffer by the injunctive relief prohibiting the retroactive enforcement of the Amendment that the posting of a bond would remedy.  The Sheriff Defendants suggest that a bond of "more than $15 million would be needed to enjoin statewide implementation of the Act."  Defs. Mem. at 20.  But the injunction would do no more than maintain the *status quo* during the pendency of this litigation.  Indeed, according to the Sheriff Defendants, New York state law provides judgment *debtors* the ability to seek redress if Plaintiffs receive payments from unsatisfied judgments during this litigation, but do not ultimately prevail.  *See* Defs. Mem. at 12.

## CONCLUSION

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rules 52(a) and 65 of the Federal Rules of Civil Procedure with respect to Plaintiffs' motion for a preliminary injunction against Defendant Judge Marks and the Sheriff Defendants.  As noted, the motion is DENIED with respect to Defendant Judge Marks.  Plaintiffs' request for a preliminary injunction is GRANTED with respect to the Sheriff Defendants.  The Court hereby enjoins the Sheriff Defendants from enforcing the Amendment on a retroactive basis. Specifically, the Sheriff Defendants are enjoined from refusing to execute an existing judgment calculated with the interest rate in effect at the time the judgment was obtained, and from enforcing reduction of the existing interest rate of the judgments entered prior to the effective date of the Amendment.

At the hearing on Plaintiffs' motion, the Plaintiffs agreed that, if the Court were to grant Plaintiffs' application, they would notify the sheriffs of all counties in New York.  Tr. at 49:1-4. Accordingly, Plaintiffs are directed immediately to provide notice of this Order to all sheriffs of all sixty-two counties in New York.

**SO ORDERED.**

**Date:  April 28, 2022**
      **New York, NY**

                                                **MARY KAY VYSKOCIL**
                                                **United States District Judge**