UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREATER CHAUTAUQUA FEDERAL CREDIT
UNION, &c., et al.,

*Plaintiffs*,

v.

SHERIFF JAMES B. QUATTRONE, &c., et al.,

*Defendants*.

No. 22-cv-2753 (MKV) (BCM)

**MEMORANDUM OF LAW OF DEFENDANT LETITIA JAMES IN SUPPORT OF
HER MOTION TO MODIFY THE SCOPE OF THE PRELIMINARY INJUNCTION**

Barbara D. Underwood
  *Solicitor General*
Ester Murdukhayeva
  *Deputy Solicitor General*
Mark S. Grube
  *Assistant Solicitor General*
    *of Counsel*

Letitia James
  *Attorney General*
  *State of New York*
Attorney for Defendant Letitia James
28 Liberty Street
New York, NY 10005
(212) 416-8028

Dated: June 5, 2023

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF THE CASE............................................................................................ 2

     A.    The Fair Consumer Judgment Interest Act ............................................... 2

     B.    This Action ............................................................................................... 4

ARGUMENT ....................................................................................................................... 8

  I.   THE COURT HAS BROAD AUTHORITY TO MODIFY THE SCOPE OF THE
     PRELIMINARY INJUNCTION.................................................................................. 8

  II.  THE SCOPE OF THE PRELIMINARY INJUNCTION IS IMPERMISSIBLY BROAD ........ 10

     A.    Settled Law Precludes Preliminary Injunctive Relief Benefitting Nonparties
         When That Relief Is Unnecessary to Afford Complete Relief to the Parties........... 10

     B.    The Equities Strongly Favor a Modification of the Scope of the
         Preliminary Injunction............................................................................. 15

CONCLUSION.................................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Aquavit Pharms. v. U-Bio Med, Inc.*,
No. 19-cv-3351, 2019 WL 8756579 (S.D.N.Y. June 21, 2019) ............................................14

*Arkansas Game & Fish Comm'n v. United States*,
568 U.S. 23 (2012) ..................................................................................................................12

*Brockett v. Spokane Arcades, Inc.*,
472 U.S. 491 (1985) ................................................................................................................11

*Cablevision Sys. Corp. v. Degirmenci*,
No. 92-cv-5460, 1995 WL 362546 (E.D.N.Y. June 2, 1995) ..................................................14

*Community Hous. Improvement Program v. City of New York*,
59 F.4th 540 (2d Cir. 2023) ............................................................................................... 12-13

*Denio v. State*,
7 N.Y.3d 159 (2006) ..............................................................................................................2, 4

*Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*,
191 F.3d 297 (2d Cir. 1999) ....................................................................................................17

*Guaranty Tr. Co. of N.Y. v. United States*,
304 U.S. 126 (1938) ................................................................................................................16

*Horne v. Flores*,
557 U.S. 433 (2009) ..................................................................................................................9

*Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*,
74 F.R.D. 621 (S.D.N.Y. 1977) .................................................................................................9

*Ideavillage Prods. Corp. v. Bling Boutique Store*,
No. 16-cv-9039, 2017 WL 1435748 (S.D.N.Y. Apr. 21, 2017) ................................................8

*Kane v. De Blasio*,
19 F.4th 152 (2d Cir. 2021) ............................................................................................... 11-12

*King-Seeley Thermos Co. v. Aladdin Indus., Inc.*,
418 F.2d 31 (2d Cir. 1969) ........................................................................................................9

*Lawsky v. Condor Cap. Corp.*,
No. 14-cv-2863, 2014 WL 3858496 (S.D.N.Y. Aug. 1, 2014) ..................................................9

*Ligon v. City of New York*,
925 F. Supp. 2d 478 (S.D.N.Y. 2013) ......................................................................................13

ii

**Cases**                                                                          **Page(s)**

*Madsen v. Women's Health Ctr.*,
    512 U.S. 753 (1994)...................................................................................................10, 15

*Meyer v. CUNA Mut. Ins. Soc'y*,
    648 F.3d 154 (3d Cir. 2011)...................................................................................12

*Moore v. Consolidated Edison Co. of N.Y., Inc.*,
    409 F.3d 506 (2d Cir. 2005)...................................................................................10

*Penn Central Transportation Co. v. City of New York*,
    438 U.S. 104 (1978)...............................................................................................1, 6

*Rent Stabilization Ass'n of the City of N.Y. v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993).......................................................................................13

*Sampson v. Murray*,
    415 U.S. 61 (1974).................................................................................................15

*Securities & Exch. Comm'n v. CKB168 Holdings, Ltd.*,
    No. 13-cv-5584, 2016 WL 11796951 (E.D.N.Y. Feb. 12, 2016) .............................8

*Sierra Club v. United States Army Corps of Eng'rs*,
    732 F.2d 253 (2d Cir. 1984)...................................................................................8-9

*Strouchler v. Shah*,
    891 F. Supp. 2d 504 (S.D.N.Y. 2012)...................................................................13

*Sykes v. Mel Harris & Assocs., LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) ...........................................................................4

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002)...............................................................................................12

*United States v. National Treasury Emps. Union*,
    513 U.S. 454 (1995)......................................................................................10, 13-14

*United States v. Salerno*,
    481 U.S. 739 (1987)...............................................................................................11

*Villiers v. Decker*,
    31 F.4th 825 (2d Cir. 2022) ................................................................................8, 17

**Laws & Rules**                                                                   **Page(s)**

*Federal*

15 U.S.C. § 1692a ...............................................................................................3

Fed. R. Civ. P. 60 ..............................................................................................9

*New York*

Ch. 258, 1981 N.Y. Laws 1336 ........................................................................2

Ch. 831, 2021 N.Y. Laws ..................................................................................3

C.P.L.R. 5230....................................................................................................17

**Miscellaneous Authorities**

Christine Abely, *Adjusting Pre- and Post-Judgment Interest Rates for Consumer Debt Collection Actions*, 88 Tenn. L. Rev. 219 (2020) ......................................4

N.Y. State Assembly Debate on Assembly Bill A6474-A, 244th Sess. (June 10, 2021) ............ 3-4

N.Y. State Senate Debate on Senate Bill S5724-A, 244th Sess. (June 8, 2021) ............................4

Senate Introducer's Mem., *in* Bill Jacket for ch. 831 (2021)............................................4

1 William Blackstone, *Commentaries on the Laws of England* (Lewis ed. 1902) (1765) ............16

## PRELIMINARY STATEMENT

In December 2021, New York Governor Kathy Hochul signed the Fair Consumer Judgment Interest Act, which modified the default post-judgment interest rate applicable to state-court money judgments for consumer debts from nine percent, a rate that imposed onerous burdens on debtors and provided an above-market windfall to creditors, to two percent, a rate consistent with the compensatory purpose of post-judgment interest. Plaintiffs, three credit unions acting on behalf of a putative class of judgment creditors, filed suit against Chief Administrative Judge Lawrence K. Marks, and three county sheriffs, claiming that the application of the two percent rate to unpaid portions of outstanding judgments entered before the Act's effective date runs afoul of the U.S. Constitution's Takings Clause and Due Process Clause. In April 2022, this Court granted preliminary injunctive relief barring the enforcement of the Act as to any interest that had accrued but remained uncollected as of the Act's effective date. In March 2023, this Court dismissed most of the claims asserted by plaintiffs, including all claims for facial relief. The sole remaining claim is an as-applied regulatory takings claim under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

This Court's motion-to-dismiss ruling requires modification of the preliminary injunction. The law is well settled that injunctive relief should be narrowly tailored to afford relief to the parties and that relief should not extend to nonparties where that relief is not necessary to vindicate the parties' rights. Here, an appropriate injunction would be limited to the three plaintiffs, and not to all consumer debt judgment holders statewide. Plaintiffs cannot rely on their conclusory class allegations to support class-wide relief when they have failed to present any evidence at all that their claims are typical of putative class members' claims. Indeed, the Second Circuit recently held that styling a complaint as a putative class action does not justify class-wide preliminary relief.

And while the Attorney General has no obligation to show changed circumstances supporting modification of the preliminary injunction, the Court's decision on defendants' motions to dismiss constitutes changed circumstances because it clarified the scope of plaintiffs' remaining claim—and that it does not support class-wide relief.

Although settled law by itself compels modifying the scope of the preliminary injunction, the equities also weigh heavily in favor of modification. The party plaintiffs will not be harmed by a modification that does not affect them, and the nonparty putative class members have made no showing of harm at all aside from the bottom-line economic impact of the Act, which is insufficient standing alone to state a regulatory takings claim. The public interest, on the other hand, weighs heavily in favor of allowing the Act to go into force as to interest accrued on other consumer debt judgments. The Legislature lowered the post-judgment interest rate retroactively to alleviate the punitive effect of the post-judgment interest rate on a vulnerable class of judgment debtors, and no party other than plaintiffs has sought relief from the Act.

In sum, as this litigation now is limited to the constitutionality of the Act *as applied* to plaintiffs, the broad scope of the preliminary injunction is not justified, and it should be modified so that it provides relief to only the three named plaintiffs.

## STATEMENT OF THE CASE

### A.    The Fair Consumer Judgment Interest Act

In New York State, the default rate of post-judgment interest is set by statute and has varied over the years. *See Denio v. State*, 7 N.Y.3d 159, 165-66 (2006). In 1981, the Legislature amended the post-judgment interest rate to a fixed rate of nine percent. Ch. 258, 1981 N.Y. Laws 1336. On December 31, 2021, Governor Hochul signed the Fair Consumer Judgment Interest Act, which sets the post-judgment interest rate on state-court judgments involving consumer debts at two

percent annually.[1] *See* Ch. 831, 2021 N.Y. Laws, p. 1. The Act is structured to preserve the property rights and legitimate interests of judgment creditors while providing immediate and necessary relief to an especially vulnerable category of judgment debtors: consumer debtors. The Act is thus limited in scope, applying only to consumer debts owed by "natural person[s]." *Id.* § 5004(a), 2021 N.Y. Laws, p. 1. The Act applies to judgments entered after the Act's effective date of April 30, 2022, and also to interest on the unpaid portions of existing judgments for periods both before and after the effective date. *Id.*; *see id.* § 7, 2021 N.Y. Laws, p. 6. The Act expressly provides that it "does not affect or create any rights or remedies related to any amounts paid prior to the effective date . . . , including amounts paid to satisfy judgments or to accrued interest or fees paid, or with respect to judgments satisfied prior to the effective date." *Id.* § 5004(c), 2021 N.Y. Laws, p. 1. The Act further confirms that judgment creditors are not required to return or refund such amounts or apply them to satisfy the principal of the judgment. *Id.* Under the plain terms of the Act, creditors need not reallocate past payments, but must simply apply the two percent rate to the outstanding principal of the judgment.

The legislative history shows that the Act responded to several policy concerns highlighting the need for retroactive application. First, the Legislature found that the then-existing nine percent interest rate vastly exceeded prevailing market rates and did not serve the general purpose of post-judgment interest: providing compensation to the prevailing party in litigation for the loss

---

[1] The Act defines "consumer debt" as any obligation "of any natural person to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes." Ch. 831, § 5004(b), 2021 N.Y. Laws, p. 1. The Act's definition of "consumer debt" tracks that term's settled meaning under the federal Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692a(3), (5); N.Y. State Assembly Debate on Assembly Bill A6474-A, 244th Sess., at 369 (June 10, 2021) ("June 10, 2021, Assembly Tr.") (statement of Assemb. Helene E. Weinstein).

of the use of funds from the time when judgment is entered until it is paid. *See Denio*, 7 N.Y.3d at 167; Christine Abely, *Adjusting Pre- and Post-Judgment Interest Rates for Consumer Debt Collection Actions*, 88 Tenn. L. Rev. 219, 233 (2020); N.Y. State Senate Debate on Senate Bill S5724-A, 244th Sess., at 4734 (June 8, 2021) (statement of Sen. Kevin Thomas). Second, the nine percent interest rate was especially punitive for judgment debtors who were unaware of judgments entered against them due to widespread unscrupulous creditor practices. *See* Senate Introducer's Mem., *in* Bill Jacket for ch. 831 (2021), at 9-10; *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 284 (S.D.N.Y. 2012) (finding falsehoods in affidavits filed by creditors to obtain default judgments), *aff'd*, 780 F.3d 70 (2d Cir. 2015). Third, the nine percent rate on post-judgment interest also created a debt trap for low-wage individuals making diligent attempts to pay their debts, as payments would largely be credited towards mounting interest rather than principal. *See* June 10, 2021, Assembly Tr. at 369 (statement of Assemb. Helene E. Weinstein); Senate Introducer's Mem., *in* Bill Jacket, *supra*, at 9-10.

## B.     This Action

On April 4, 2022, plaintiffs filed this putative class action lawsuit and moved for a preliminary injunction. Plaintiffs are federally chartered credit unions in New York State that are owed post-judgment interest, including by consumers. (Class Action Compl. ¶¶ 7, 16-18 (Apr. 4, 2022), ECF No. 1.) In the initial complaint, plaintiffs named as defendants in their official capacities: (1) Hon. Lawrence K. Marks, who was then serving as Chief Administrative Judge for the New York State Unified Court System; and (2) the sheriffs of Chautauqua, Erie, and Niagara counties. (*Id.* ¶¶ 19-22.) Plaintiffs' motion for a preliminary injunction did not seek relief with respect to the Attorney General, who was not named as a defendant in the original complaint. (*See* Op. & Order Granting Prelim. Inj. (PI Order) at 9 (Apr. 28, 2022), ECF No. 57.)

Plaintiffs assert that the application of the two percent interest rate to uncollected amounts outstanding on judgments entered before the effective date runs afoul of protections under the U.S. Constitution.[2] (Am. Class Action Compl. (Am. Compl.) ¶¶ 1-12 (Apr. 21, 2022), ECF No. 47.) First, plaintiffs claim that the Act violates the Takings Clause of the Fifth Amendment by effecting a physical and regulatory taking of plaintiffs' purported right to receive interest on preexisting judgments at the prior statutory rate of nine percent. (*Id.* ¶¶ 69-84.) Second, plaintiffs assert a violation of their substantive due process rights under the Fourteenth Amendment, claiming that the Act infringes their property rights in post-judgment interest. (*Id.* ¶¶ 85-94.)

At oral argument on the preliminary injunction motion, plaintiffs' counsel explained that plaintiffs' primary theory of liability was the physical per-se takings claim. Based on that theory, plaintiffs' counsel asked for a preliminary injunction against enforcement of the retroactive application of the Act pending these proceedings. (*See* Hr'g Tr. at 10-14, 17-20.) The Court recognized that there was a distinction in scope between plaintiffs' physical takings argument where "you have to have a taking of the entirety" and a "regulatory taking where [the Court] ha[s] to take a look at the economics." (*Id.* at 20.) After oral argument on the preliminary injunction motion, plaintiffs amended their complaint on April 21, 2022, to name the Attorney General as a defendant. (Am. Compl. ¶¶ 23-29.)

On April 28, 2022, this Court granted a preliminary injunction enjoining the three sheriffs named as defendants in this action from enforcing the Act on a retroactive basis as to *all* consumer

---

[2] The complaint does not challenge the prospective application of the two percent rate to future judgments or to interest accrued after the effective date. (*See* Am. Compl. ¶ 75 (alleging vested property right in "interest that will have accrued on [plaintiffs'] judgments from the date of entry to" the Act's effective date); *see also* Hr'g Tr. at 13 (Apr. 20, 2022), ECF No. 58 (acknowledging plaintiffs did not move to preliminarily enjoin Act's prospective application).)

debt judgment holders. (PI Order at 35.) The Court did not address whether injunctive relief was appropriate against the Attorney General since that relief was not sought in plaintiffs' motion. (*Id.* at 9.) As a preliminary matter, the Court held that plaintiffs' Takings Clause claim falls under the analytical framework for regulatory takings, rather than physical takings. (*Id.* at 22-23.) The Court then concluded that plaintiffs had shown a likelihood of success of establishing a regulatory taking under *Penn Central*, 438 U.S. 104, relying in part on plaintiffs' argument that the retroactive application of the Act would cause a diminution in their expected return on consumer debt judgments. (PI Order at 26-28.) The Court has acknowledged that it ruled on plaintiffs' likelihood of success on the merits "without the benefit of adversarial briefing" and that "the remaining defendants [named in the preliminary injunction motion] ultimately advised that they did not oppose entry of a preliminary injunction." (Op. & Order Denying Intervention & Resolving Mots. to Dismiss (MTD Order) at 9 n.7 (Mar. 31, 2023), ECF No. 102.) The Court also did not receive the benefit of adversarial briefing on the proper scope of preliminary injunctive relief.

Following the amendment of the complaint to name the Attorney General and the Court's issuance of the preliminary injunction order, the Attorney General promptly notified the Court and other parties of her intent to move to dismiss the complaint, relief which, if granted, would vacate the preliminary injunction order in its entirety. (*See* Letter from Mark S. Grube, Assistant Solicitor Gen., N.Y. State Off. of the Att'y Gen. (May 5, 2022), ECF No. 63.)

On March 31, 2023, the Court granted in part and denied in part that motion. The Court explained that while plaintiffs' complaint was ambiguous as to whether plaintiffs asserted a facial or as-applied challenge to the Act, their opposition to the motions to dismiss clarified that "they argue only that the Act is unconstitutional *as it applies to them*." (MTD Order at 16 & n.18.) The Court held that plaintiffs failed to state a Takings Clause claim under either a physical takings or

categorical regulatory takings theory. (*Id.* at 18-20.) While the Court also held that plaintiffs had stated an as-applied *Penn Central* claim, the Court's analysis differed markedly from the preliminary injunction order. (*See id.* at 21-27.) Significantly, the Court acknowledged that plaintiffs' allegation that they would suffer a loss of hundreds of thousands of dollars, or nearly eighty percent in expected income on post-judgment interest—an allegation that the Court weighed in favor of granting a preliminary injunction (PI Order at 27)—was legally insufficient to show that the economic effect of the Act on plaintiffs weighed in favor of finding a regulatory taking (MTD Order at 22-23). Rather, the Court relied exclusively on plaintiffs' allegations that the three named plaintiffs made decisions about loan criteria and acceptable credit risk based on the nine percent post-judgment interest rate to plead an interference with their investment-backed expectations. (*See id.* at 23-24.) The Court also reasoned that the application of the third *Penn Central* factor—the character of the government action—was "unusual" and often "found to weigh against a regulatory taking," but found that the Act's supposed "resembl[ance]" to a physical invasion weighed in favor of a regulatory taking here. (*Id.* at 24-25; *see id.* at 24-26.) Finally, the Court dismissed plaintiffs' claim under the Due Process Clause. (*Id.* at 28-30.)

Shortly after the Court issued this decision, which effectively denied vacatur of the preliminary injunction and clarified the scope of plaintiffs' remaining claim, the Attorney General advised the Court and the parties of her intent to move to modify the scope of the preliminary injunction in light of the contours of the case following the motion-to-dismiss order. (*See* Letter from Mark S. Grube, Assistant Solicitor Gen., N.Y. State Off. of the Att'y Gen. (Apr. 21, 2023), ECF No. 110.) The Court set a briefing schedule for the motion at the June 2, 2023, initial conference (*see* Civil Case Management Plan & Scheduling Order at p. 4 (June 2, 2023), ECF No. 122), and the Attorney General is filing this motion the following business day.

# ARGUMENT

## I. THE COURT HAS BROAD AUTHORITY TO MODIFY THE SCOPE OF THE PRELIMINARY INJUNCTION

The Court's power to modify injunctions, like its power over all its orders, is inherent. Injunctions are equitable remedies that "march[] along according to the nature of the proceeding" and are "subject to adaption as events may shape the need." *Sierra Club v. United States Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). The Second Circuit has expressly delineated different standards that apply to motions to modify a final or permanent injunction and motions to modify a preliminary injunction. While a movant must show "a significant change in the law or facts" to modify a final or permanent injunction under Rule 60(b)(5) of the Federal Rules of Civil Procedure, a court reviews a request to modify a preliminary injunction with "the same discretion it exercised in granting or denying injunctive relief in the first place." *Id.* A court abuses its discretion if it bases its decision on whether to modify a preliminary injunction on "an error of law or . . . the wrong legal standard." *Villiers v. Decker*, 31 F.4th 825, 831 (2d Cir. 2022) (quotation marks omitted).

Contrary to plaintiffs' position in their premotion letter (*see* Letter from Kan M. Nawaday, Venable LLP (Nawaday Letter) at 1 (Apr. 26, 2023), ECF No. 112), the Attorney General need not show a significant change of circumstances to modify the preliminary injunction. To be sure, some courts in this district have adopted that requirement, but it is grounded in out-of-circuit appellate precedent.[3] In fact, that requirement is contrary to *Sierra Club*, which made clear that in the

---

[3] *See, e.g.*, *Ideavillage Prods. Corp. v. Bling Boutique Store*, No. 16-cv-9039, 2017 WL 1435748, at *3 (S.D.N.Y. Apr. 21, 2017) (relying on decisions of "[s]everal district courts in this Circuit, as well as other Courts of Appeal"); *Securities & Exch. Comm'n v. CKB168 Holdings, Ltd.*, No. 13-cv-5584, 2016 WL 11796951, at *10 (E.D.N.Y. Feb. 12) (report & recommendation)
<span style="float:right">*(continued on the next page)*</span>

Second Circuit the requirement to show "a significant change in the law or facts" applies to requests to modify *only final or permanent* injunctions. *See* 732 F.2d at 256. And even in the context of final or permanent injunctions, the standard is not as strict as plaintiffs suggest. Judge Friendly explained long ago that "[w]hile changes in fact or in law afford the clearest bases" for modifying a final or permanent injunction, a court's equitable powers also extend to modifying such injunctions based on "a better of appreciation of the facts in light of experience." *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F.2d 31, 35 (2d Cir. 1969).

The text of the Federal Rules of Civil Procedure confirms that the heightened standard of changed circumstances does not apply to motions to modify a preliminary injunction. By its plain terms, Rule 60(b)(5) applies to requests for relief from only "a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Lest there was any doubt about the scope of the rule, the Advisory Committee explained that it added the qualifying word "final" to Rule 60(b) to emphasize that "interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment.[4]

---

(relying on "[o]ther federal Courts of Appeal, including the First and Third Circuits"), *adopted*, 2016 WL 11796982 (E.D.N.Y. Sept. 28, 2016); *Lawsky v. Condor Cap. Corp.*, No. 14-cv-2863, 2014 WL 3858496, at \*5 (S.D.N.Y. Aug. 1, 2014).

[4] *See also Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977) ("Rule 60(b) applies only to final orders and not to interlocutory de[c]rees" and court has "continuing plenary power over its interlocutory orders under which the Court is not bound by Rule 60(b)(5)'s strict standard of 'changed circumstances'" (citations omitted)). The additional requirement of showing a significant change of circumstances makes sense in the context of requests to modify final or permanent injunctions where there are competing interests in finality and the need to reexamine institutional reform decrees, which "often remain in force for many years." *See Horne v. Flores*, 557 U.S. 433, 447-48 (2009). Rule 60's balancing of the finality interests in final judgments is simply not applicable to provisional remedies.

In sum, a district court entertaining a motion to modify a preliminary injunction exercises the same discretion that it employs in determining whether to grant the preliminary injunction in the first place, and it abuses that discretion if its determination rests on an error of law. As the Attorney General will show below, the scope of the preliminary injunction in this case is contrary to binding precedent and thus must be modified regardless of whether there are changed circumstances. And even if such a requirement did apply, the Court's disposition of the motions to dismiss, allowing plaintiffs to proceed on only a fact-specific, as-applied *Penn Central* claim, constitutes changed circumstances warranting modification of the preliminary injunction.

## II.   THE SCOPE OF THE PRELIMINARY INJUNCTION IS IMPERMISSIBLY BROAD

### A.   Settled Law Precludes Preliminary Injunctive Relief Benefitting Nonparties When That Relief Is Unnecessary to Afford Complete Relief to the Parties.

A preliminary injunction is an "extraordinary and drastic remedy." *Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quotation marks omitted). Accordingly, it is well settled that injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994) (quotation marks omitted). While occasionally a case may require a court "to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute," courts should not "provide relief to nonparties when a narrower remedy will fully protect the litigants." *United States v. National Treasury Emps. Union*, 513 U.S. 454, 477-78 (1995). The requirement to narrowly draw injunctive relief is particularly apt in cases involving constitutional challenges because courts generally "avoid[] unnecessary adjudication of constitutional issues." *Id.* at 478.

The Second Circuit's recent decision in *Kane v. De Blasio* is instructive on the application of these principles to requests for preliminary injunctive relief in cases involving both facial and as-applied claims. *See* 19 F.4th 152 (2d Cir. 2021). In *Kane*, the plaintiffs (fifteen individuals suing on behalf of a putative class) sought preliminary injunctive relief against the enforcement of an order by the New York City Commissioner of Health and Mental Hygiene requiring individuals working in New York City schools to be vaccinated against COVID-19. The plaintiffs asserted that the order was unconstitutional as both a facial matter and as applied to the named plaintiffs and similarly situated individuals. The Second Circuit concluded that the plaintiffs were likely to succeed on the merits of their as-applied challenge, but not their facial challenge. *See id.* at 158-59, 164. The Court then declined to extend preliminary injunctive relief beyond the named plaintiffs to putative class members. The Court emphasized that it had rejected the plaintiffs' facial challenge and explained that the plaintiffs' request for broader relief attempted to transform "their garden-variety 'as applied' claims into what are effectively claims on behalf of a class." *Id.* at 173. By limiting preliminary injunctive relief to the named plaintiffs, the Second Circuit recognized that "a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985)

These principles compel modification of the scope of the preliminary injunction here, which enjoins the retroactive application of the Act against *every* consumer debt judgment holder in the State. Plaintiffs have not plausibly alleged that the Act is facially unconstitutional, and they did not purport to defend such a claim in their opposition to the motions to dismiss. (*See* Pls.' Omnibus Opp'n to Mots. to Dismiss at 20 (July 13, 2022), ECF No. 95.) To make such a showing, plaintiffs would have had to demonstrate that there are "no set of circumstances" under which the Act can be constitutionally applied. *See United States v. Salerno*, 481 U.S. 739, 745 (1987); *accord*

*Community Hous. Improvement Program v. City of New York*, 59 F.4th 540, 548 (2d Cir.), *pet. for cert. pending*, No. 22-1095 (docketed U.S. May 10, 2023). *Penn Central* claims, like those asserted here, are typically pursued as as-applied challenges because they require a highly fact-specific analysis that is not amenable to a facial challenge. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002); *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 32 (2012). In sum, this case now presents an as-applied *Penn Central* challenge brought by three plaintiffs (*see* MTD Order at 16), and preliminary injunctive relief beyond those named plaintiffs runs counter to precedent.

Plaintiffs' sparse and conclusory class allegations (*see* Am. Compl. ¶¶ 58-68) do not justify the preliminary injunction's overbroad scope. The Second Circuit also noted in *Kane* that the "use [of] the words 'class action' in the title of" a complaint does not justify broad preliminary injunctive relief as to all putative class members. *See* 19 F.4th at 173-74. Rather, the "rule that injunctive relief should be narrowly tailored to prevent harm to the parties before the court applies with special force where, as here, there is no class certification." *Id.* at 174 (quotation marks omitted); *see also Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 171 (3d Cir. 2011) (collecting cases where courts "found injunctions to be overbroad where their relief amounted to class-wide relief and no class was certified").

Plaintiffs have not proffered allegations, let alone presented any evidence or asserted any legal theory, in support of either as-applied regulatory takings claims by nonparties or class certification on a regulatory takings theory. This Court has held that the mere bottom-line economic impact of the Act on the consumer debt judgments held by plaintiffs is legally insufficient to show a regulatory taking. (MTD Order at 22-23.) Rather, plaintiffs' claim turns on their ability to show that they made specific business decisions—such as decisions about loan criteria and acceptable

credit risk—in reliance on the nine percent post-judgment interest rate to show an interference with their investment-backed expectations. (*See id.* at 5, 23-24.) It is generally "impracticable to assess a class of owners' expectations without analysis on an individualized basis," *Community Hous. Improvement Program*, 59 F.4th at 555, because the *Penn Central* analysis requires a review of "a host of individualized financial data" for each plaintiff, *see Rent Stabilization Ass'n of the City of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993). Plaintiffs' conclusory allegation that their "claims are likewise typical of those of the proposed class" (Am. Compl. ¶ 62) is wholly inadequate to plausibly allege, much less prove, that nonparty putative class members also made the same decisions about loan criteria and acceptable credit risk in reliance on a nine percent interest rate. Without any evidence supporting nonparties' regulatory takings claims or showing that the named plaintiffs' claims are typical, the Court should decline to afford broad injunctive relief to nonparties and thereby adjudicate constitutional issues that are unnecessary to afford complete relief to the named plaintiffs. *See National Treasury Emps. Union*, 513 U.S. at 478.

The district court decisions on which plaintiffs rely (*see* Nawaday Letter at 2-3), both of which predate the Second Circuit's decision in *Kane*, do not support preliminary injunctive relief for nonparty putative class members here. In *Strouchler v. Shah*, the court concluded that the named plaintiffs were likely to satisfy the requirements for class certification, including that their claims were typical of the putative class. 891 F. Supp. 2d 504, 519 (S.D.N.Y. 2012). Plaintiffs have not attempted to make such an evidentiary showing here. And *Ligon v. City of New York*, 925 F. Supp. 2d 478 (S.D.N.Y. 2013), concerned the New York City Police Department's "stop and frisk" practices, presenting the type of institutional reform litigation where broad injunctive relief is necessary "to vindicate a party's right[s]," *National Treasury Emps. Union*, 513 U.S. at 477-78.

Here, by contrast, the Court may afford full relief to the party plaintiffs without a broader injunction sweeping in nonparties.

As explained above (at 8-9), the Attorney General need not show changed circumstances for the Court to conform the scope of the preliminary injunction with settled law. The Court has a responsibility "to ensure that it does not keep in place burdensome restraints that are unsupported by evidence." *Cablevision Sys. Corp. v. Degirmenci*, No. 92-cv-5460, 1995 WL 362546, at *2 (E.D.N.Y. June 2, 1995). Particularly given that the Court did not have the benefit of adversarial briefing on the preliminary injunction motion (*see* MTD Order at 9 n.7), it is appropriate for the Court to consider the legality of the scope of the preliminary injunction when the issue is raised, *see Aquavit Pharms. v. U-Bio Med, Inc.*, No. 19-cv-3351, 2019 WL 8756579, at *1 (S.D.N.Y. June 21, 2019) (modifying preliminary injunction to "limit its extraterritorial application in the European Union").

In any event, the Court's ruling on the motions to dismiss constitutes changed circumstances warranting reassessment of the scope of the preliminary injunction. Before that ruling, it was unclear whether this case may present a facial challenge that might justify providing relief to nonparties. *See National Treasury Emps. Union*, 513 U.S. at 477-78. In particular, plaintiffs presented physical takings, categorical regulatory takings, and due process challenges that could have implicated the facial validity of the Act, and plaintiffs explained at the preliminary injunction hearing that their broad physical takings theory was their primary claim for relief. (*See, e.g.*, Hr'g Tr. at 10-11.) But those challenges did not survive the motions to dismiss. And the Court's analysis of the *Penn Central* claim that remains differed markedly from its analysis in the preliminary injunction order. The Court initially concluded that plaintiffs could satisfy their *Penn Central* regulatory takings claim by relying on the bottom-line diminution in revenue that they would suffer from the retroactive

change to the interest rate (*see* PI Order at 27-28)—a percentage diminution that would necessarily be uniform across the putative class. But when presented with adversarial briefing, the Court held that such evidence would not be legally sufficient to establish a *Penn Central* claim and that plaintiffs' claim rested largely on allegations concerning individual business decisions relevant to their investment-backed expectations. (*See* MTD Order at 5, 22-24.) The motion-to-dismiss order thus established that the primary evidence presented in favor of the preliminary injunction—namely, the bottom-line economic impact of the Act—would not support a broad preliminary injunction benefiting nonparties and thus constitutes a significant change of circumstances warranting a modification of the preliminary injunction.

**B.      The Equities Strongly Favor a Modification of the Scope of the Preliminary Injunction.**

A modification of the preliminary injunction will not harm the named plaintiffs. The named plaintiffs will still receive "complete relief," *Madsen*, 512 U.S. at 765 (quotation marks omitted), even if the preliminary injunction's application to nonparties is modified. And the Court's analysis of the equities in the preliminary injunction order does not support a finding of harm to nonparties. The Court focused its analysis on its finding that the retroactive application of the Act likely constitutes a taking (*see* PI Order at 33), but as explained above (at 12-13), plaintiffs have not presented any evidence supporting fact-specific constitutional claims by nonparties not before the Court. And the mere fact that the nonparties may suffer "the temporary loss of income," which may be recoverable if they ultimately prevail on class certification and the merits, "does not usually constitute irreparable injury." *See Sampson v. Murray*, 415 U.S. 61, 90 (1974).

On the other hand, the public interest will be severely harmed by an overbroad injunction of a duly enacted state law. As explained above (at 3-4), the Legislature sought to remove the onerous burden that an excessive interest rate placed on a vulnerable class of consumer debtors that did not

serve the compensatory purpose of post-judgment interest. That interest rate is especially punitive for judgment debtors who were unaware of judgments entered against them due to widespread unscrupulous creditor practices, and those who are making diligent attempts to pay their debts but are caught in debt traps as payments are largely credited towards mounting interest rather than principal. It would be inequitable to withhold relief afforded by the Legislature to these debtors when their creditors (other than the named plaintiffs) have presented no evidence in support of highly fact-specific claims that the Act intrudes on their constitutional rights under *Penn Central*.

Plaintiffs—who waited to seek preliminary injunctive relief nearly three months after Governor Hochul signed the Act until the eve of its coming into force—are wrong to claim that the Attorney General's purported delay weighs against relief. (*See* Nawaday Letter at 2.) As explained above (at 6-7), after being named a defendant, the Attorney General promptly moved to dismiss the complaint in its entirety, "go[ing] further" than merely seeking modification of the preliminary injunction (*see* MTD Order at 12). And once the contours of plaintiffs' remaining claim were clear after the Court issued the motion-to-dismiss order, the Attorney General promptly informed the Court and the parties of her intention to file this motion. Plaintiffs appear to suggest that the Attorney General should have filed a motion earlier and speculated on what claims might survive the motions to dismiss and what evidence might be relevant to those claims. But principles of equity do not require burdening the Court with excessive motion practice based on such specula-tion. In any event, plaintiffs' argument also disregards the longstanding rule that equity does not prevent the government from taking the time needed to pursue the public good by litigating to defend and enforce its laws. *See* 1 William Blackstone, *Commentaries on the Laws of England* *247 (Lewis ed. 1902) (1765); *see also Guaranty Tr. Co. of N.Y. v. United States*, 304 U.S. 126,

132 (1938) (explaining "the sovereign is exempt from the consequences of its laches" to further public policy of "preserving the public rights" (quotation marks omitted)).

Finally, plaintiffs and the sheriff defendants are mistaken to claim (Nawaday Letter at 3) that a modification will cause administrative chaos. As an initial matter, administrative difficulties are not an adequate justification to continue preliminary injunctive relief premised on "an error of law." *See Villiers*, 31 F.4th at 831 (quotation marks omitted). And even if they were, plaintiffs and the sheriff defendants do not explain, let alone prove, how compliance with a properly tailored preliminary injunction would be impracticable. The Act's prospective application has been in force for over a year, and during that time, sheriffs statewide have had to apply separate post-judgment interest rates for consumer debt judgments and other judgments. And under the terms of the preliminary injunction, the three sheriff defendants have had to apply different interest rates to consumer debt judgments depending on whether that interest accrued before or after April 30, 2022.[5] Moreover, judgment creditors must specify the applicable interest rate in an execution. C.P.L.R. 5230(a). That requirement places the onus on judgment creditors to properly list the interest rate to which they are entitled and ensures that the sheriff defendants do not inadvertently fail to comply with the preliminary injunction's requirements. (*See* Letter from Daniel A. Spitzer, Hodgson Russ LLP at 1 (Apr. 26, 2023), ECF No. 111.)

---

[5] The other sheriffs in New York State are not parties to this litigation and cannot be subject to the preliminary injunction because this Court generally has no jurisdiction to enjoin nonparties, and the nonparty sheriffs fall within no exception to this rule. *See Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-05 (2d Cir. 1999). Accordingly, modification of the preliminary injunction will have no effect on them.

**CONCLUSION**

For the foregoing reasons, this Court should grant the Attorney General's motion to modify

the scope of the preliminary injunction and limit its scope to the three named plaintiffs.

Dated: New York, New York
        June 5, 2023

                                        Respectfully submitted,

                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*


                                  By:    _/s/ Mark. S. Grube_____
                                         MARK S. GRUBE
                                         Assistant Solicitor General

                                         28 Liberty Street
                                         New York, NY 10005
                                         (212) 416-8028

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
MARK S. GRUBE
  *Assistant Solicitor General*
      *of Counsel*