USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/15/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREATER CHAUTAUQUA FEDERAL CREDIT UNION, individually and on behalf of all others similarly situated, BOULEVARD FEDERAL CREDIT UNION, individually and on behalf of all others similarly situated, GREATER NIAGARA FEDERAL CREDIT UNION, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

SHERIFF JAMES B. QUATTRONE, in his official capacity as Sheriff of Chautauqua County, New York, SHERIFF JOHN C. GARCIA, in his official capacity as Sheriff of Erie County, New York, SHERIFF MICHAEL J. FILICETTI, in his official capacity as Sheriff of Niagara County, New York, and LETITIA JAMES, in her official capacity as Attorney General of the State of New York,

Defendants.

1:22-cv-2753 (MKV)

**OPINION AND ORDER GRANTING MOTION TO MODIFY THE SCOPE OF PRELIMINARY INJUNCTION**

---

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs brought this action challenging the enactment of a New York statute which reduces the default post-judgment interest rate applicable to money judgments for consumer debts from nine percent to two percent, both retroactively and prospectively. By order dated April 28, 2022, the Court preliminarily enjoined the retroactive application of the statute after concluding that Plaintiffs were likely to succeed on their claim that the reduction of the interest rate with respect to already-accrued interest works as an unconstitutional taking. The Attorney General, now joined as a named defendant in the action, moves to modify the scope of that preliminary injunction. For the reasons that follow, the motion is granted.

1

## FACTUAL BACKGROUND

Familiarity with this Court's previous opinions in this case is presumed. *See Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405 (S.D.N.Y. 2022) ("PI Opinion"); *Greater Chautauqua Fed. Credit Union v. Marks*, No. 22-cv-2753, 2023 WL 2744499 (S.D.N.Y. Mar. 31, 2023) ("MTD Opinion"). In brief, on December 31, 2021, Governor Kathy Hochul signed into law the Fair Consumer Judgment Interest Act (the "Act"), which reduced the default post-judgment interest rate on state-court judgments involving consumer debts from nine percent to two percent. MTD Opinion at *2. By its express terms, the Act applies prospectively to judgments entered after the Act's effective date of April 30, 2022, and also retroactively to interest on the unpaid portions of judgments that were entered prior to the effective date. *Id.*

Plaintiffs Greater Chautauqua Federal Credit Union, Boulevard Federal Credit Union, and Greater Niagara Federal Credit Union collectively hold hundreds of consumers judgments. *Id.* at 3. Before the Act went into effect, Plaintiffs commenced this action by filing a putative class action complaint against Lawrence K. Marks, then-Chief Administrative Judge of the State of New York,[1] and the sheriffs of Chautauqua, Erie, and Niagara counties (the "Sheriff Defendants"). *Id.* Plaintiffs asserted claims rooted in both the Due Process Clause and the Takings Clause of the Constitution and sought a judgment enjoining the enforcement of the Act and declaring its retroactive application unconstitutional. *Id.* Plaintiffs also moved for a preliminary injunction to prohibit the Act from going into effect on April 30, 2022. *Id.*

The Court held oral argument on Plaintiffs' Motion for a Preliminary Injunction on April 20, 2022. [ECF No. 49]. Although she was not named as a defendant, a lawyer for the New York

---

[1] Judge Marks resigned as Chief Administrative Judge in November 2022. The Court dismissed the claims against Judge Marks in an Opinion dated March 31, 2023. [ECF No. 102]. At the request of the Attorney General [ECF No. 108], the Court directed the Clerk of Court to remove Judge Marks's name and title from the caption following his dismissal from the case. [ECF No. 109].

2

State Attorney General Letitia James (the "Attorney General") appeared at the hearing and expressed the intent of the Attorney General to intervene in the event that the case was not resolved on the threshold issues. MTD Opinion at *3. The next day, Plaintiffs filed an Amended Complaint, which added the Attorney General as a defendant. *Id.* The Attorney General then filed a letter arguing that she was not a proper party to the suit and that, in any event, Plaintiffs' motion for a preliminary injunction should be denied because they have failed to demonstrate a likelihood of success on the merits. *Id.*

On April 28, 2022, the Court granted the preliminary injunction with respect to the Sheriff Defendants, after concluding that Plaintiffs have standing to sue those defendants, and that, on balance, the factors considered in evaluating a preliminary injunction weighed in Plaintiffs' favor. PI Opinion at 425. The Court denied the preliminary injunction with respect to Judge Marks, concluding that he is not a proper party against whom injunctive relief may be granted. PI Opinion at 423. The Court did not consider whether the Attorney General was a proper defendant because a preliminary injunction had not been sought against her. PI Opinion at 415 n.1.

After the Court issued its Order, a motion to intervene was filed by an individual debtor and by a legal services organization (together, the "proposed intervenors") for the purpose of seeking to modify the preliminary injunction order. MTD Opinion at *4. Specifically, the proposed intervenors argued that the preliminary injunction should apply only to the three Sherriff Defendants (and no non-party sheriffs) and to the three Plaintiff creditors (and no non-party creditors). *Id.* The Court denied that motion on timeliness grounds, concluding that the "proposed intervenors had reasonable notice of the [preliminary injunction] proceedings and delayed

3

unreasonably in filing their motion . . . , to the point that any intervention would prejudice Plaintiffs, who would be forced to relitigate issues already decided." *Id.* at 7.[2]

In the same opinion, the Court addressed the motions to dismiss filed by the Defendants. The Court first dismissed the case against Judge Marks, concluding that he was not a proper party, and declined to dismiss the case against the Attorney General. MTD Opinion at *8–9. Moving to the merits, the Court dismissed Plaintiffs' due process claim and physical takings claim, while concluding that Plaintiffs had plausibly stated a claim for a regulatory taking. *Id.* at *10–16. In so doing, the Court noted that Plaintiffs, as clarified in their briefing, brought only an "as-applied" challenge to the Act, and not a "facial" challenge. *Id.* at *9 n.18.

Several weeks after the Court issued its Opinion, the Attorney General filed a letter requesting a conference regarding her anticipated motion to modify the preliminary injunction "so that it provides relief to only the three named plaintiffs." [ECF No. 110 at 2]. The Sherriff Defendants opposed this request, claiming that modifying the injunction would create an administrative burden for them, "as it would require them to apply different rates of interest to different creditors within their counties." [ECF No. 111]. Plaintiffs also opposed the request, for reasons discussed at greater length below. [ECF No. 112].

The Court held an Initial Pretrial Conference at which the anticipated motion to modify the preliminary injunction was discussed and a briefing schedule was set. [ECF No. 125] ("IPTC Transcript"). The Attorney General filed her motion [ECF No. 123] and accompanying memorandum of law [ECF No. 124] ("AG Br."). The Sheriff Defendants opposed the motion through the Declaration of Aaron M. Saykin, Esq. [ECF No. 128] ("Saykin Decl."), and the

---

[2] The proposed intervenors have appealed the Court's decision to the Second Circuit [ECF No. 113], where the appeal has been stayed to allow consideration of this Court's disposition of the instant motion. *See Greater Chautauqua Federal Credit Union v. Quattrone*, No. 23-733 (2d Cir. 2023).

Plaintiffs filed a Memorandum of Law in opposition [ECF No. 129] ("Opp."). The Attorney General filed a reply [ECF No. 130] ("Reply"). Oral argument was held on August 15, 2023 [ECF No. 137] ("Oral Arg. Transcript").

## **LEGAL STANDARD**

The pending motion raises a threshold issue of what standard governs a motion to modify a preliminary injunction. The Attorney General and Plaintiffs offer different competing standards.

The Attorney General derives her standard from the Second Circuit's decision in *Sierra Club v. Army Corps of Engineers*, 732 F.2d 253 (2d Cir. 1984). That case concerned a request to modify an injunction that called a halt to Westway, the proposed west-side Manhattan super highway. *Sierra Club*, 732 F.2d at 254. The district judge had enjoined most of the construction work (for environmental reasons) but had allowed certain activities to continue for a set period of time. *Id.* at 255. When that time expired, the New York State Department of Transportation sought to modify the injunction in order to permit it to continue certain preliminary design and engineering work on the project. *Id.* The district judge denied that request, which the Second Circuit found to be improper since the decision effectively would have killed the project and upended the *status quo*. *Id.* at 255.

As relevant here, the Second Circuit arrived at its conclusion by first addressing the standard governing a motion to modify an injunction. The standard, the court explained, turned on the nature of the injunction. If the injunction was "final," the district court could modify it "only where conditions have so changed as to make such relief equitable, *i.e.*, a significant change in the law or facts." *Id.* at 256. If the injunction was "preliminary," the district court would be "charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Id.* The Second Circuit's differentiation between the standards to modify "final" and "preliminary" relief is bolstered by the text of the Federal Rule of Civil Procedure,

5

which notes the heightened standard in Rule 60(b)(5) only applies to "a *final* judgment, order, or proceeding."[3]  Fed. R. Civ. P. 60(b) (emphasis added); *see also Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977) ("Rule 60(b) applies only to final orders and not to interlocutory de[c]rees" and district courts have "continuing plenary power over its interlocutory orders under which the Court is not bound by Rule 60(b)(5)'s strict standard of 'changed circumstances' " (citations omitted)).

Plaintiffs attempt to sidestep *Sierra Club*, focusing instead on some district court cases from within this Circuit.  Those cases invoke out-of-Circuit case law to conclude that a party moving to modify a preliminary injunction must show that such modification is justified by a "significant change in facts or law." *Lawsky v. Condor Cap. Corp.*, No. 14-cv-2863, 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014) (citations omitted); *see also Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, No. 13-cv-5584, 2017 WL 4465726, at *4 (E.D.N.Y. June 20, 2017). Plaintiffs concede that such a rule has not been adopted by the Second Circuit. Opp. at 2–4.  But they claim that the out-of-Circuit cases are persuasive and that the use of the change-of-circumstances rule is consistent with the reasoning set forth in *Sierra Club*. Opp. at 4.  The Court disagrees.

The standard that Plaintiffs urge this Court to employ—*i.e.*, requiring a significant change in law or facts—is akin to the standard that the Second Circuit has ruled applies to final or permanent injunctions.  While recent district court decisions may have departed from the Circuit's distinction between the governing standards for modification of preliminary versus final relief, those decisions do not attempt to distinguish or otherwise engage *Sierra Club*, which indisputably

---

[3] The Advisory Committee has further clarified that "interlocutory judgments are not brought within the restrictions of [Rule 60(b)(5)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.  Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment.

6

remains good and binding law. As summarized above, *Sierra Club* explained that the standard governing a motion to modify an injunction instead turns on the nature of the injunction to be modified. *Sierra Club*, 732 F.2d at 256. Injunctions are equitable remedies that "march[] along according to the nature of the proceeding." *Id*. They are "executory and subject to adaption as events may shape the need," and the district court's power to modify a preliminary injunction "like the power over all its orders, is inherent." *Id*.

## DISCUSSION

### I. INJUNCTIVE RELIEF WITH RESPECT TO AN "AS-APPLIED" CLAIM SHOULD BE NARROWLY TAILORED.

As a general rule, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994). "Although the occasional case" may require a court to "to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute," the court should not "provide relief to nonparties when a narrower remedy will fully protect the litigants." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995).

Here, Plaintiffs filed their Complaint contemporaneously with their motion for a preliminary injunction seeking to prohibit the Defendants from implementing the retroactive applicability of the Act, which was set to go into effect imminently. [ECF No. 1, 10]. Given the urgency, the Court considered the case at the time the injunction was sought and without the benefit of the Complaint and adversarial briefing. PI Opinion at 419. The Court relied primarily on the parties' Memorandums of Law with respect to the sought preliminary injunction. Significantly, the Complaint is styled as a "Class Action Complaint," and devotes an entire section to listing— albeit in rather conclusory fashion—"class allegations." Compl. ¶¶ 51–61; *see also* AC ¶¶ 58–68. At that juncture, a class had not yet been certified, which was not atypical at such an early stage in

the proceeding. With that backdrop, the Court preliminary enjoined the Sheriff Defendants from enforcing the Act on a retroactive basis to *all* judgment holders, and not just the three named Plaintiffs.

However, this proceeding has continued "march[ing] along," and in light of the motion before the Court, the Court now must consider whether the current injunction is "subject to adaption as events [] shape the need." *Sierra Club*, 732 F.2d at 256. This case has now been pending for almost a year and a half and has been actively litigated. Since the preliminary injunction was issued, the parties have naturally filed subsequent motions, submitted subsequent letters, and provided supplemental documents. The nature of Plaintiffs' claims has evolved. Significantly, in its ruling on the Attorney General's motion to dismiss, the Court noted that while the Amended Complaint was ambiguous as to whether Plaintiffs asserted a facial or as-applied challenge to the Act, "Plaintiffs clarif[ied] in their omnibus opposition brief that they are bringing an *as-applied challenge*." MTD Opinion at *16 n.18 (citing [ECF No. 95]). The Attorney General argues in its motion to modify the preliminary injunction that, since the litigation is now limited to the constitutionality of the Act *as-applied*, the injunction should be limited to the three named Plaintiffs, and not to *all* consumer debt judgment holders statewide. A.G. Br. at 2–3.

The Second Circuit's decision in *Kane v. De Blasio* is instructive on the application of preliminary injunctive relief in cases with facial versus as-applied claims. 19 F.4th 152 (2d Cir. 2021). In *Kane*, the court considered a Free Exercise Challenge to New York City's vaccine mandate brought by public school employees. 19 F.4th at 158. The plaintiffs sought preliminary injunctive relief against the enforcement of the mandate, asserting that the mandate was unconstitutional as both a facial matter and as applied to them. *Id*. The Second Circuit concluded that the named plaintiffs were likely to succeed on the merits of their as-applied challenge, but not

8

their facial challenge. *Id.* at 158–59, 164. As a result, the Court declined to extend preliminary injunctive relief beyond the named plaintiffs "to thousands of supposedly 'similarly situated' nonparties to this litigation." *Id.* at 172. The Second Circuit emphasized that the plaintiffs' request for broader relief attempted to transform " 'as applied' claims into what are effectively claims on behalf of a class." *Id*. at 173.

Here, although Plaintiffs styled this case as a putative class action, Plaintiffs have expressly stated that their Complaint pleads an "as-applied regulatory taking." *See* [ECF No. 95] at 20. There is no longer a facial challenge and this Court's motion to dismiss opinion was grounded on that rationale. In that opinion, the Court held that Plaintiffs had stated a regulatory takings claim under the *Penn Central Transportation Co. v. City of New York* analysis, which necessarily involves a *fact-based* inquiry into various "complex [] factors including [1] the regulation's economic effect on the [property owner], [2] the extent to which the regulation interferes with reasonable investment-backed expectations, and [3] the character of the government action." MTD Opinion at *12 (citing 438 U.S. 104 (1978)). Specifically, the Court relied on *Plaintiffs'* property value reduction, *Plaintiffs'* expectations regarding post-judgment interest, and *Plaintiffs'* decisions about loan criteria and acceptable risk. The Court noted these factors were "mere examples of the types of circumstances which should be considered in a regulatory takings analysis . . . 'characterized by essentially ad hoc, *factual inquirie*s, designed to allow careful examination and weighing of all the relevant *circumstances*.' " *Id*. at *13–14 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)).

Harkening back to *Kane*, after finding that the plaintiffs failed to state a facial claim, the Second Circuit declined to extend preliminary injunctive relief beyond the named plaintiffs. 19 F.4th at 172. Similarly, Plaintiffs here have now made clear that they assert an as-applied

challenge to the Act. Accordingly, the Court now concludes that consistent with *Kane*, the preliminary injunctive relief in this case should be limited to the three Named Plaintiffs. By modifying the preliminary injunctive relief to include only the Named Plaintiffs, the Court is ensuring it does not "extend its invalidation of a statute further than necessary to dispose of *the case before it*." *Kane* 19 F.4th at 174 (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985)).

## II.     PLAINTIFFS HAVE FAILED TO FILE FOR CLASS CERTIFICATION

Plaintiffs argue that narrowing the preliminary injunction would undermine the purpose of the preliminary injunction by upending the *status quo* for the putative class—*i.e.*, "thousands of debt holders across this state." Opp. at 1, 9. The glaring issue with this argument is that there is no "class," and Plaintiffs obtained injunctive relief relying on their individual, factual circumstances. While Plaintiffs may have been able to rely on its "class action" argument in its original motion for the preliminary injunction, the Court can no longer base extraordinary injunctive relief on the possibility that Plaintiffs may attempt to certify a class. It is noteworthy that despite styling the Complaint as a "Class Action Complaint" and inserting rather conclusory class allegations, Plaintiffs have done nothing in the more than a year since its filing to attempt to certify a purported class. In fact, at oral argument on the pending motion to modify the injunction, when the Court asked Plaintiffs whether they "[a]re [] intending to move for class certification," Plaintiffs repeatedly insisted that they "do not believe class certification is in [sic] necessary in this

case." [4]  Indeed, Plaintiffs maintain that they did not intend to move for certification "at this point."[5] Oral Arg. Transcript p. 22 ¶¶ 3–8, p. 23, ¶¶ 4–7.

This Court heeds the Second Circuit's warning that "the rule that injunctive relief should be narrowly tailored to prevent harm to the *parties before the court* 'applies with special force where,' as here, 'there is no class certification.' " 19 F.4th at 174 (citing *California v. Azar*, 911 F.3d 558, 582–83 (9th Cir. 2018) (emphasis added); *see id*. ("Injunctive relief generally should be limited to apply *only to named plaintiffs* where there is no class certification.") (emphasis added); *see also Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) ("[S]uch broad relief is rarely justified because injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*."); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 171 (3d Cir. 2011) (collecting cases in which courts have "found injunctions to be overbroad where their relief amounted to class-wide relief and no class was certified"). To do otherwise would "end run around the rules governing class certification." *Kane*, 19 F.4th at 173. "Why, after all, would [P]laintiffs go through the trouble of demonstrating numerosity, commonality, typicality, and adequa[cy] if they can simply obtain classwide relief as [they] now" have under the current preliminary injunction?[6] *Id*.

---

[4] On oral argument, Plaintiffs maintained that "[t]he distinction between as-applied and facial in this particular case really is one without a difference" because "[t]he class [Plaintiffs have] defined is the only class . . . singled out by the amendment." Oral Arg. Transcript p. 30 ¶¶ 24–25, p. 40, ¶¶ 3–6. The Court recognized that, "[i]f [Plaintiffs] get a class certified" and the putative class includes all holders of unpaid consumer debt judgments that were entered before the effective date, Plaintiffs "may" have an argument "that there is not a lot of distinction between a facial challenge to the retroactive application and an as-applied challenge with respect to the Plaintiffs." *Id*. at p. 40, ¶¶ 15–20. However, the Court clarified that that argument "presumes [Plaintiffs] move for class certification" and the class is certified. *Id*. at p. 40, ¶¶ 21–23.

[5] When first asked by the Court whether they intended to move for class certification, Plaintiffs stated "at this point, no." Oral Arg. Transcript p. 22, 14–15. However, once the Court pressed the issue, Plaintiffs changed course mid-argument, stating that they "do intend to move for class certification." Despite this apparent change of heart, Plaintiffs have yet to move for class certification. Oral Arg. Transcript p. 23, 1–2.

[6] Aside from the aforementioned conclusory class allegations contained in the Complaint, Plaintiffs have not offered any evidentiary showing that they would satisfy the requirements for class certification. Thus, the Court does not attempt to surmise on the likelihood that Plaintiffs would successfully certify the purported class.

11

## CONCLUSION

For the foregoing reasons, the motion by the Attorney General to modify the scope of the preliminary injunction order to limit it to the three Named Plaintiffs is hereby GRANTED. The Clerk of Court respectfully is requested to close the Motions at ECF Nos. 110 and 123.

**SO ORDERED.**

Date: **September 15, 2023**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**