USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/20/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREATER CHAUTAUQUA FEDERAL
CREDIT UNION, *individually and on behalf
of all others similarly situated*, BOULEVARD
FEDERAL CREDIT UNION, *individually
and on behalf of all others similarly situated*,
GREATER NIAGARA FEDERAL CREDIT
UNION, *individually and on behalf of all
others similarly situated*,

                              Plaintiffs,

                 -against-

SHERIFF JAMES B. QUATTRONE, *in his
official capacity as Sheriff of Chautauqua
County, New York*, SHERIFF JOHN C.
GARCIA, *in his official capacity as Sheriff of
Erie County, New York*, SHERIFF MICHAEL
J. FILICETTI, *in his official capacity as
Sheriff of Niagara County, New York*, and
LETITIA JAMES, *in her official capacity as
Attorney General of the State of New York*,

                              Defendants.

1:22-cv-2753 (MKV)

**<u>OPINION AND ORDER
DENYING MOTION FOR
CLASS CERTIFICATION</u>**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Greater Chautauqua Federal Credit Union, Boulevard Federal Credit Union, and

Greater Niagara Federal Credit Union, (collectively, "Plaintiffs"), bring this putative class action

asserting that the retroactive application of the Fair Consumer Judgment Interest Act, N.Y. Leg.

2021-2022 Reg. Sess., S.5724A § 1, A6474A § 1 (the "Act"), which reduced the default post-

judgment interest rate on state-court judgments involving consumer debts from nine percent to two

percent, is unconstitutional.   Amended Complaint ¶¶ 43–44 ("Am. Compl.," [ECF No. 47]).

Plaintiffs bring this action against Attorney General Letitia James, (the "Attorney General") and

the Sheriffs of Chautauqua, Erie, and Niagara counties (the "Sheriff Defendants"), (collectively,

"Defendants").  Two years into this case, Plaintiffs now move to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  [ECF No. 168].

For the following reasons, Plaintiffs' motion to certify a class pursuant to Rule 23 is DENIED.

## BACKGROUND

Familiarity with this Court's previous opinions and orders in this case is presumed.  *See Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405 (S.D.N.Y. 2022) (the Preliminary Injunction Opinion, [ECF No. 57], "PI Op."); *Greater Chautauqua Fed. Credit Union v. Marks*, No. 22-cv-2753, 2023 WL 2744499 (S.D.N.Y. Mar. 31, 2023) (the Motion to Dismiss Opinion, [ECF No. 102], "MTD Op."); *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22-cv-2753, 2023 WL 6037949 (S.D.N.Y. Sept. 15, 2023) (the Modified Preliminary Injunction, [ECF No. 139], "MPI Op.").

In brief, on December 31, 2021, Governor Kathy Hochul signed into law the Act which reduced the default post-judgment interest rate on state-court judgments involving consumer debts from nine percent to two percent.  Am. Compl. ¶¶ 43–44.  The Act applies both prospectively and retroactively.  Am. Compl. ¶ 45.  Plaintiffs collectively hold hundreds uncollected judgments that will be affected by the Act.  Am. Compl. ¶¶ 7, 16–18.  Before the Act went into effect, Plaintiffs commenced this action by filing a putative class action complaint against Lawrence K. Marks,[1] then-Chief Administrative Judge of the State of New York, and the Sheriff Defendants.  ("Org. Compl.," [ECF No. 1]).  Plaintiffs argued that the retroactive application of the Act is unconstitutional and sought on behalf of themselves, and the purported class, permanent injunctive

---

[1] Judge Marks resigned as Chief Administrative Judge in November 2022.  The Court dismissed the claims against Judge Marks in an Opinion dated March 31, 2023.  [ECF No. 102].  At the request of the Attorney General, [ECF No. 108], the Court directed the Clerk of Court to remove Judge Marks's name and title from the caption following his dismissal from the case, [ECF No. 109], which was completed.

relief enjoying the enforcement of the Act and a declaration that the Act violates the Takings Claus of the Fifth Amendment.  Org. Compl. ¶¶ 54, 62–88.

### A.  Preliminary Injunction

Simultaneously with filing the original complaint Plaintiffs filed a Proposed Order to Show Cause seeking a Preliminary Injunction to enjoin the effective date of the Act.  [ECF No. 10].  At oral argument on Plaintiffs' Motion for Preliminary Injunction, the Attorney General appeared and stated that if the case was not resolved on the threshold issues, the Attorney General would intervene.  ("Preliminary Injunction Oral Argument Hearing Transcript" or "PI Or. Arg. Tr." at 2:15–21, [ECF No. 58]).  The next day, Plaintiffs filed an Amended Complaint which added the Attorney General as a defendant.  Am. Compl. ¶ 23.  On April 28, 2022, the Court granted a preliminary injunction after concluding that Plaintiffs have standing to sue and that they have demonstrated a claim under the Fifth Amendment Takings Clause.  PI Op. at *16, *19–20.

### B.  Motion to Dismiss

Defendants then filed motions to dismiss and supporting materials.  [ECF Nos. 79, 81, 85]. The Court dismissed the case against Judge Marks, finding that he was not a proper party, but declined to dismiss the case against the Attorney General.  MTD Op. at *8–9.  The Court further dismissed Plaintiffs' due process claim and physical takings claim, but concluded that Plaintiffs have plausibly stated a claim for regulatory takings.  MTD Op. at *10–16.  The Court noted that this was in part because Plaintiffs clarified that they were bringing an "as-applied" challenge to the Act, and not a "facial" challenge to its constitutionality.  MTD Op. at *9.

### C.  Modifying the Scope of Preliminary Injunction

Subsequently, the Attorney General filed a motion seeking to modify the scope of the preliminary injunction.  [ECF Nos. 123, 124].  Specifically, the Attorney General sought to limit the preliminary injunction to provide relief to only the three named Plaintiffs because the question

of the constitutionality of the Act in this action is limited to *as-applied* to Plaintiffs, and not a facial challenge. [ECF No. 124 at 2]. During oral argument on the motion in August 2023, the Court inquired about the seeming tension between an "as applied" challenge and suing on behalf of a purported class and Plaintiffs went back and forth on whether they intended to seek to certify a class. ("Motion to Modify the Injunction Oral Argument Hearing Transcript" or "MI Or. Arg. Tr." at 22:6–23:2, [ECF No. 137]). When initially asked if Plaintiffs purported to represent a class, Plaintiffs said, "we would like to just make clear, as we said in our papers, that we do not believe class certification is in [sic] necessary in this case." MI Or. Arg. Tr. at 22:6–8. The Court specifically inquired, "[i]s that saying you do not intend to move?" MI Or. Arg. Tr. at 22:14. Plaintiffs once again confirmed "at this point, no." MI Or. Arg. Tr. at 22:15. Mere moments later Plaintiffs said, "we do intend to move for class certification." MI Or. Arg. Tr. at 23:1–2. The Court then asked Plaintiffs to explain the delay in moving for class certification. MI Or. Arg. Tr. at 31:13–16. Plaintiffs failed to provide a clear answer, but promised to move for class certification "expeditiously." MI Or. Arg. Tr. at 31:15–16. The Court one more time warned Plaintiffs that they "have to move or [they] have to drop [their] class claims." MI Or. Arg. Tr. at 32:9–9. Plaintiffs ultimately stated that, if the Court granted the Attorney General's motion to modify the preliminary injunction, Plaintiffs would "move *immediately* for class certification." MI Or. Arg. Tr. at 35:13–19 (emphasis added).

The Court granted Defendants' request to modify the scope of the preliminary injunction based on Plaintiffs' clarification that they were bringing an as-applied challenge. The Court concluded that, especially in the absence of a certified class, it could not justify extending injunctive relief to others without conducting the same complex fact-based analysis required under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 123 (1978), for each would be plaintiff. MPI Op. at *8–10. The Court reiterated its concern that Plaintiffs still had not moved

to certify a class about a year and a half into the pendency of the case. MPI Op. at *10 ("While Plaintiffs may have been able to rely on its 'class action' arguments in its original motion for the preliminary injunction, the Court can no longer base extraordinary injunctive relief on the possibility that Plaintiffs may attempt to certify a class.").

### D. Motion to Certify a Class

Seven months after the Court's issuance of the MPI Opinion and two years into this case, Plaintiffs finally moved to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, [ECF No. 168], and in support of their motion, Plaintiffs submitted a memorandum of law, ("Pls. Mem.," [ECF No. 169]), and supporting materials. Specifically, Plaintiffs in support filed the Expert Report of John Tonetti, ("Tonetti Report," [ECF No. 169-1]), the Expert Report of Todd J. Zywicki, ("Zywicki Report," [ECF No. 169-2]), a Supplemental Expert Report of John Tonetti, ("Supp. Tonetti Report," [ECF No. 169-3]), a Declaration of Kan Nawaday, ("Nawaday Decl.," [ECF No. 169-4]), and a Declaration of Mitchell Mirviss, ("Mirviss Decl.," [ECF No. 169-5]). Defendants submitted a memorandum of law in opposition, ("Defs. Opp.," [ECF No. 174]), and supporting materials including a Declaration of Aaron M. Saykin, ("Saykin Decl.," [ECF No. 173]), and a Declaration of Michael A. Berg ("Berg Decl.," [ECF No. 175]), which attached nine exhibits including the Expert Report of James Wilcox ("Wilcox Report," [ECF No.175–9]). Plaintiffs replied. ("Pls. Reply," [ECF No. 179]).

## LEGAL STANDARD

A "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate" compliance with Rule 23 of the Federal Rules of Civil Procedure. *Comcast Corp.*, 569 U.S. at 33 (quoting *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  The party seeking class certification bears the burden of establishing, by a preponderance of the evidence, that each of Rule 23's requirements has been met.  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Under Rule 23, a class may be certified only if the proposed class satisfies the "four threshold requirements [of Rule 23(a)]: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020); *see also* Fed. R. Civ. P. 23(a)(1)–(4).  In addition, the Second Circuit has also recognized that Rule 23(a) contains an "implied requirement of ascertainability," *i.e.*, a requirement that the class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting 7A Charles Alan Wright & Arthur R. Miller *et al.*, Federal Practice & Procedure § 1760 (3d ed. 1998)); *see also In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 594 (S.D.N.Y. 2021).

If each requirement of Rule 23(a) is satisfied, "the court must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)." *Davis v. City of New York*, 296 F.R.D. 158, 165 (S.D.N.Y. 2013) (quoting *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 231 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008)).  Plaintiffs here seek to certify a class under Rule 23(b)(2).  Pl. Mem. at 22.  To meet that requirement, Plaintiffs must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

**DISCUSSION**

## I.    CLASS CERTIFICATION

*A.  Timeliness*

As an initial matter, the Attorney General argues that Plaintiffs' motion for class certification should be denied because the motion is "untimely, and prejudicially so."  Defs. Opp. 8.  Specifically, the Attorney General asserts that Plaintiffs filed the motion "more than two years after they filed the action, four months after the original fact discovery deadline of December 1, 2023, and two months after the extended close of fact discovery . . . ."  Defs. Opp. at 9.  Therefore, the Attorney General contends Defendants were prejudiced because they have not been able to obtain full discovery regarding the proposed class.  Defs. Opp. at 9.  The Attorney General also argues that Plaintiffs did not even seek non-party discovery related to the putative class until October 2023 and as a result obtained incomplete, and untimely, data further, prejudicing Defendants.  Defs. Opp. at 9.  Finally, the Attorney General claims that Plaintiffs inconsistent statements regarding their intention to move for class certification, and the need for class certification, compounded the prejudice and impeded the orderly course of litigation.  Defs. Opp. at 10.

Plaintiffs argue that the motion is not untimely because it was filed at the earliest practicable time.  Pls. Reply at 9.  Specifically, Plaintiffs allege that the merits of the *Penn Central* claim on behalf of the purported class relies heavily on expert testimony and therefore, Plaintiffs filed their motion shortly after serving expert reports and before the close of expert discovery.  Pls. Reply at 9.  Plaintiffs argue that even if the motion were untimely, it was not prejudicially so, because Defendants knew Plaintiffs contemplated seeking class certification from the very beginning of the action.  Pls. Reply at 10.  Plaintiffs argue that Defendants cannot claim prejudice because they did in fact conduct discovery on the matter of class certification when they deposed

Plaintiffs' experts, who supplied class evidence, and retained Professor Wilcox to rebut Plaintiffs' experts and to analyze the impact of the Act on Plaintiffs and other creditors who are the putative class members proposed by Plaintiff. Pls. Reply at 10.

Class certification "is to be decided 'at an early practicable time' after the commencement of a suit." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215 (2d Cir. 2004) (quoting Fed. R. Civ. P. 23(c)(1)). And "[a] party's failure to move for class certification until a late date is a valid reason for denial of such a motion." *Kapiti v. Kelly*, No. 07-CV-3782, 2008 WL 3874310, at *3 (S.D.N.Y. Aug. 18, 2008) (quoting *Sterling v. Envtl. Control Bd. of City of New York*, 793 F.2d 52, 58 (2d Cir. 1986)). However, a motion for class certification should be denied as untimely only when the delay may cause prejudice or unduly complicate the case. *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12–13 (2d Cir. 2017) (summary order).

The motion in this case is untimely. As the Attorney General points out, the Plaintiffs filed class certification more than two years after they initiated this action, four months after the original fact discovery deadline, and two months after the extended close of fact discovery. *See Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342, 2022 WL 596831 at *17 (S.D.N.Y. Feb. 25, 2022) ("class certification is untimely because it comes more than three years after they filed this action, four months after fact discovery closed (and after the defendants had the opportunity to take class discovery), and after the deadline for filing dispositive motions"); *see also Kapiti*, 2008 WL 3874310 at *3 (denying motion for class certification as untimely when made a year after the complaint was filed and one month before the close of discovery). Moreover, at the hearing on the Defendants motion to modify the scope of the preliminary injunction in August 2023 seven months before Plaintiffs ultimately moved and before discovery closed, Plaintiffs represented that they would move immediately for class certification. MI Or. Arg. Tr. at 35:13–19.

However, untimeliness alone is not enough to warrant dismissal; the delay also must cause prejudice or unduly complicate the case. *Acticon* AG, 687 F. App'x at 12–13. Plaintiffs argue that if the Court "somehow" finds the motion untimely, its motion "still cannot be denied because there is no prejudice" since the Attorney General knew that Plaintiffs contemplated class certification from the outside of this action. Pls. Reply at 10. The Court finds this argument hollow. It is true that both complaints Plaintiffs filed were captioned as a "class action complaint," although the complaints contained only conclusory class allegations. *See* Org. Compl. ¶¶ 51–61; Am. Compl. ¶¶ 58–68. It is also true that courts routinely find this sufficient to put the defendants on notice of potential class certification to counter any potential prejudice. *Acticon*, 687 F. App'x at 12; *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14-CV-7990, 2017 WL 4541434, at *4 (S.D.N.Y. Oct. 10, 2017) (untimeliness arguments were unavailing because plaintiffs' complaint describes its allegations as a class action with class allegations); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 206 (S.D.N.Y. 2006) (rejecting untimeliness argument when "Plaintiff's procedural stance has been as a class action since the inception of this matter, evinced both by the Complaint and by conversations and correspondence with the Court").

In this case, however, Plaintiffs have been incredibly inconsistent with respect to their intention to seek class certification. Because the nature of the claims—individual versus class claims—impacted whether Plaintiffs' claim was an "as applied" versus "facial" challenge to the Act and thus changed the proper scope of any injunction and the relevant discovery, the Court pressed Plaintiffs on whether they were suing individually or on behalf of a class and urged that this important issue be resolved early. During oral argument on the Defendants' motion to modify the scope of the preliminary injunction, Plaintiffs said, "we would like to just make clear, as we said in our papers, that we do not believe class certification is in [sic] necessary in this case." MI Or. Arg. Tr. at 22:6–8. The Court clarified with Plaintiffs, "[i]s that saying you do not intend to

move?"  MI Or. Arg. Tr. at 22:14.  Plaintiffs confirmed "at this point, no."  MI Or. Arg. Tr. at 22:15.  Then, Plaintiffs switched their stance and said, "we do intend to move for class certification."  MI Or. Arg. Tr. at 23:1–2.  Because the nature of the claims—individual versus class claims—impacted the scope of the injunction and the relevant discovery, the Court again warned Plaintiffs that they "have to move or [they] have to drop [their] class claims."  MI Or. Arg. Tr. at 32:9–9.  Plaintiffs promised that, if the Court modified the preliminary injunction, Plaintiffs would "move *immediately* for class certification."  MI Or. Arg. Tr. at 35:13–19 (emphasis added).  The preliminary injunction was modified, and Plaintiffs waited until seven months later, after fact discovery had closed, to move for class certification.  The Court does find that this delay was abusive and tactical, especially in light of the fact that Plaintiffs were repetitively warned by the Court that they needed to move for class certification expeditiously given the impact it has on the proper scope of injunctive relief and discovery.

Plaintiffs cannot assert an as-applied challenge and then after the close of discovery first attempt to certify a class.  Defendants are reasonable in asserting that the delayed filing of this class certification motion is prejudicial.  Nevertheless, the Court has discretion whether to deny the motion as untimely, and if that were the only issue, the Court would consider accommodating additional time to permit Defendants to conduct additional discovery to avoid potential prejudice.  However, timeliness is not the only issue here.  *See Huang v. Shanghai City Corp*, No. 19-CV-7702, 2022 WL 1468450 at *9 (S.D.N.Y. May 10, 2022).  Plaintiffs' motion also fails on the merits.

### B. *Ascertainability and Rule 23(a) Requirements*

#### 1. Ascertainability

In addition to the four requirements listed in Rule 23(a), the Second Circuit also imposes an implicit threshold requirement that a class be ascertainable.  *Brecher*, 806 F.3d at 24.  The standard to establish that a class is ascertainable "is not a demanding one; it is 'designed only to

prevent the certification of a class whose membership is truly indeterminable.' " *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 89 (S.D.N.Y. 2017) (quoting *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014)). "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017); *see also Brecher*, 806 F.3d at 24–25.

The Attorney General contends that the proposed class is "vague and indefinite" because it "encompasses an untold number of businesses" and therefore, the class could not be objectively determined and feasibly administered. Defs. Opp. at 11. Furthermore, Defendants argue that the proposed class would include creditors that hold judgments against consumers but have abandoned efforts to collect. Defs. Opp. at 11. Thus, the proposed class includes creditors that will be unaffected by the Act's challenged application and "[w]eeding out these creditors would require a factual inquiry into the precise circumstances faced by each." Defs. Opp. at 11. Plaintiffs argue that the proposed class is ascertainable because the criteria of the class—"*i.e.*, whether an entity holds a judgment, whether that judgment arises from consumer debt (as defined in the [Act]), and whether that judgment was entered in New York prior to April 30, 2022" are objective, and thus the class "has definite boundaries." Pls. Mem. at 4.

As a theoretical matter, the proposed class is ascertainable because Plaintiffs' definition of the proposed class utilizes objective criteria and has definite boundaries. The proposed class consists of "all holders of unpaid judgments arising from consumer debt, as defined in the [Act], entered in New York prior to April 30, 2022." Pls. Mem. at 4. First, the proposed class members are based on the objective criteria of whether the proposed member holds an unpaid judgment arising from consumer debt. Second, the time frame included in the proposed class coupled with the objective criteria makes the class sufficiently definite. *See In re Petrobras Sec.*, 862 F.3d at

264 (concluding that the purported class was sufficiently ascertainable because it was based on objective criteria bounded by a class period and in denying appellants challenge to the practicality of making these determinations, the court explained that "the ascertainability analysis is limited to narrower question of whether those determinations are objectively possible").  The Court finds that, objectively, the purported class is ascertainable.

### 2.  Rule 23(a) Requirements

Under Rule 23, a class may be certified only if the proposed class satisfies the "four threshold requirements [of Rule 23(a)]: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x at 764; Fed. R. Civ. P. 23(a)(1)–(4).

#### i.    *Numerosity*

Under Rule 23, the proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007).  "Numerosity is presumed for classes larger than forty members." *Penn. Public Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).  In this case, Plaintiffs claim the proposed class likely includes "at least [] hundreds of entities, if not reaching over a thousand entities."  Pls. Mem. 5.  Further, the Attorney General "does not contend that there are too few affected judgment holders in New York State to satisfy the numerosity requirement of Rule 23(a)(1)."  Defs. Opp. at 11.  The Court finds that the numerosity requirement is satisfied.

#### ii.    *Commonality*

Commonality requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This "requires the existence of both at least one *question* common to the class, and also that a class action 'has the capacity . . . to generate common *answers* apt to drive the

resolution of the litigation.' " *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96–CV–8414, 2013 WL 4647190, at *6 (S.D.N.Y. Aug. 29, 2013) (quoting *Wal-Mart,* 564 U.S. at 358) (emphasis in original), *aff'd* 555 Fed. App'x 37 (2d Cir. 2014). Therefore, what matters to class certification "is not the raising of common questions," but rather "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50.

Although the Rule 23(a)(2) commonality requirement is less demanding than the Rule 23(b)(3) predominance requirement, under Second Circuit precedent, courts still need to assess "(1) the elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (explaining that the two elements are common to both the commonality and the predominance inquiry) (internal quotations omitted). Thus, dissimilarities within the proposed class "have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350. However, this "does not mean that all issues must be identical as to each member." *Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*, 331 F.R.D. 279, 291 (S.D.N.Y. 2019); *Spagnola v. Chubb Corp*, 264 F.R.D. 76, 95 (S.D.N.Y. 2010) (explaining that the "existence of some individualized questions need not destroy commonality").

Rule 23(a)(2)'s commonality requirement can also be satisfied if plaintiffs "demonstrate that the class members have suffered the same injury." *Johnson*, 780 F.3d at 137 (citing *Wal-Mart*, 564 U.S. at 349–50). However, suffering from the same injury "does not mean merely that they have suffered a violation of the same provision of law;" it also requires that the claims "depend upon a common contention." *Wal-Mart*, 564 U.S. at 350. The Second Circuit has reiterated that

if plaintiffs "were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm, this is precisely the type of situation for which the class action is suited." *Brown v. Kelly*, 609 F.3d 467, 468 (2d Cir. 2010) (internal quotations omitted); *see also Johnson*, 780 F.3d at 137–38 (concluding there was a common question where all class members' claims arose from the "same conduct or practice by the same defendant," and the acts being challenged were "not specific to any particular [p]laintiff,").

Plaintiffs have failed to meet their burden of raising common questions of law or fact shared by the purported class that have the ability "to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50. To begin, Plaintiffs have brought an "as applied" challenge to the Act. *See* MTD Op. at *16 n. 18 ("Plaintiffs clarify in their omnibus opposition brief that they are bringing an as-applied challenge."); *see also* ECF No. 95 at 20 (Plaintiffs asserted in their motion to dismiss opposition briefing that they "have adequately pled that the Amendment constitutes an *as-applied* regulatory taking") (emphasis added). An as-applied challenge is inherently at odds with the commonality and typicality requirements of class certification because an as-applied challenge "requires an *analysis of the facts of a particular case* to determine whether the application of a statute, even one constitutional on its face, *deprived the individual to whom it was applied* of a protected right." *Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) (emphasis added).

Even when the Court looks past the fact that Plaintiffs have brought an as-applied challenge, the common questions that the purported class share, Pls. Mem. at 7, are insufficient to support commonality. The Attorney General argues that "the evidence contradicts Plaintiffs' contention that this action raises several common issues of fact or law" because individualized analysis is required to answer the common questions alleged by Plaintiffs. Defs. Opp. at 12. Specifically,

14

the Attorney General asserts that "determining whether (and to the extent to which) the Act has any appreciable economic impact on creditors, or thwarts their reasonable investment-backed expectations, will vary with the type of creditor and their individual finances." *Id.*

Plaintiffs argue that the common questions that can be resolved on a class-wide basis include: (1) "whether the proper denominator is the post-judgment interest alone or the interest plus the underlying judgment"; (2) "whether class members, prior to the Amendment, in fact had expectations concerning the statutory post-judgment interest rate"; (3) "whether the above expectations are 'investment-backed'—*i.e.* whether the class members can demonstrate that they acquired their property interest 'in reliance on a state of affairs that did not include the challenges regulatory regime"; (4) "the degree to which the Amendment interferes with the above expectations"; (5) "whether the Amendment's interference concerns a 'constitutionally protected property interest'"; (6) "whether the thwarted expectations were reasonable when acted upon"; and (7) "whether the Amendment 'can be characterized as a physical invasion." Pls. Mem. at 9–16.

The questions raised by Plaintiffs may very well be common to the purported class, but they will certainty not "generate common *answers* apt to drive the resolution of the litigation," *Gulino*, 2013 WL 4647190, at *6 (quoting *Wal-Mart,* 564 U.S. at 358) (emphasis in original), *aff'd* 555 Fed. App'x 37 (2d Cir. 2014), because they depend on extremely individual facts including each class members' expectations, the reasonableness of those expectations, and the impact of the Act on those expectations. For example, one of Plaintiffs' own experts acknowledges throughout his report that the financial models that lenders, like the purported class members, use to determine their expectations and risk tolerance are in embedded with their own experiences and history. *See* Tonetti Report ¶ 43 ("In constructing [models that rank the risk that the lender assumes], lenders consider . . . *its own experience*" (emphasis added), Tonetti Report ¶ 45 ("Lenders forecast profitability using *their historical experience* with similar loans of similar risk") (emphasis added);

Tonetti Report ¶ 47 ("The expectations of recovery, for each proposed class member, are embedded in *their financial modeling*" which as Tonetti explained is based on their prior experience). The alleged common questions do not support commonality because, as Plaintiffs own expert concedes, the answers are highly specific to the individual purported class members and will not drive the resolution of the litigation.

Furthermore, even if somehow these questions are viewed as common to the class, the proof and analysis required to determine the answers to each question would also be individualized. *See Wal-Mart*, 564 U.S. at 350. For example, determining a purported class members' expectations, whether those expectations were reasonable, and how the Act impacted those expectations would require personalized proof, such as the members' financial models. This is inappropriate and does not support commonality. *See Johnson*, 780 F.3d at 138 ("whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief"). This weighs against finding commonality.

Additionally, Plaintiffs also claim that commonality is satisfied because the proposed class members will all experience the same injury, a seven percent reduction in the value of their post-judgment interest. Pls. Mem. at 7–8. However, the actual loss resulting from the enforcement of the Act will differ for each Plaintiff, as conceded by Plaintiffs' own experts. *See* Zywicki Report ¶ 94 ("there may be some slight differences in the magnitude of the Act's impact on each participant in the consumer finance industry. It is possible that not every member of the proposed Class will suffer all of the impacts I describe above."); Tonetti Report ¶ 71 ("the proposed class members might subjectively feel the impact of the loss differently . . . "). Plaintiffs argue that these differences in impact do not matter because all the purported class members face the same seven-percent reduction and this injury is based on the same contention, *i.e* a regulatory takings

claim under *Penn Central*.  Pls. Mem. at 8.  However, one of the necessary inquiries under the *Penn Central* analysis is an examination of the regulation's alleged economic impact on the claimant.  438 U.S. at 124.  Therefore, the actual economic impact or injury sustained by each purported class member would require the Court to engage in individualized analysis and may very well yield different answers that thwarts classwide resolution.  *See Wal-Mart*, 564 U.S. at 350 (suffering from the same injury "does not mean merely that they have suffered a violation of the same provision of law;" it also requires that the claims "depend upon a common contention" and that the common contention "must be of such a nature that it is capable of classwide resolution").

Finally, Plaintiffs also attempt to point to the question of "whether the Amendment 'can be characterized as a physical invasion'" as a common question among the purported class to support a finding of commonality, but this argument fails as Plaintiffs acknowledge, Pls. Reply at 3, since the Court already has determined that Plaintiffs have failed to state a physical takings claim. MTD Op. at *18–20.

Thus, the Court finds that Plaintiffs have failed to satisfy Rule 23(a)'s commonality requirement.

### iii.    Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "is satisfied when each class "member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).  However, typicality requires that "the disputed

issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016).

In support of typicality, Plaintiffs argue that the purported class's claims all arise from "[a] single challenged law" and "[a]ll class members advance an identical legal theory under *Penn Central*." Pls. Mem. at 18. Plaintiffs claim that "any tangential difference between the factual circumstances of the named plaintiffs and proposed class members are immaterial." Pls. Mem. at 18. The Attorney General asserts that typicality is not satisfied because "Plaintiffs are differently situated from other judgment holders, and thus their claims are not typical." Defs. Opp. at 15. Specifically, the Attorney General points to several factual differences among the class members, such as the differences in size, business models, locations, clienteles, incentives, and risk tolerances to demonstrate that the claims of Plaintiffs are not typical of the purported class. Defs. Opp. at 15.

The Court agrees that each of the proposed class member's claims arise from the same course of events, specifically the enforcement of the Act. Furthermore, the Court agrees that each of the proposed class members seek to advance a regulatory takings claim under *Penn Central*. However, the *Penn Central* analysis necessarily involves complex "ad-hoc, factual inquiries" into various complicated factors including (1) the regulation's economic effect on the claimant, (2) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations, and (3) the character of the government action. 438 U.S. at 124. Plaintiffs specifically alleged that the Act is unconstitutional under *Penn Central **as it applies to them***. MTD Op. at *9; MPI Op. at *8. In support of their regulatory takings claim under the *Penn Central* analysis, Plaintiffs asserted highly specific and individualized arguments. For example, Plaintiffs alleged that "*Plaintiffs have been expecting* the judgments to accrue interest at nine percent per

annum . . . [b]ased on these expectations, *Plaintiffs have made decisions* about loan criteria and *acceptable* [to them] credit risk, *i.e.*, who receives loans and at what rate [and] . . . the Amendment will interfere with *Plaintiffs' investment-backed expectations*."  AC ¶ 79 (emphasis added); *see also* ECF No. 95 at 22 ("*Plaintiffs* have also submitted sworn declarations attesting to how the Amendment will impact *their businesses . . . Plaintiffs* will lose hundreds of thousands of dollars in *expected income . . . Plaintiffs* will likely be forced to change *their lending practices* or otherwise reduce services to the community.") (emphasis added and internal citations omitted). These allegations are based on *Plaintiffs'* property value reduction, *Plaintiffs'* investment backed expectations regarding post-judgment interest, and *Plaintiffs'* decisions about loan criteria and acceptable risk tolerance.  Thus, the named Plaintiffs' claims cannot be considered typical of the proposed class members because there will be numerous variations and individualized factual arguments required to prove Defendants' liability ***as applied to each individual purported class member*** under *Penn Central*.  *See Mazzei*, 829 F.3d at 272 (affirming the District Court's ruling that typicality was lacking because, although there were common questions amongst the proposed class, there were differences in issues central to some of the class members' claims that were not central to the named plaintiff's claims).

The Second Circuit has already recognized, albeit in a different context, that it is generally "impracticable to assess a class of owners' expectations without analysis on an individualized basis." *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 555 (2d Cir. 2023). Here, each putative class member's regulatory takings claim under *Penn Central* will turn on a number of fact-specific and individualized factual and legal arguments concerning their investment-backed expectations, lending criteria, risk tolerance, and the amount of post-judgment interest on consumer debt judgments that they are no longer attempting to collect.  Therefore, even though all of the proposed class members advance a regulatory takings claim arising from the

enforcement of the Act, typicality is not met because these are not minor variations in the underlying issues of law and fact. The Court finds that Plaintiffs have failed to satisfy the typicality requirement of Rule 23(a).

    *iv.* *Adequacy*

  The final prerequisite of Rule 23(a) is that Plaintiffs demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Not every conflict will prevent class certification; the conflict must be "fundamental" to violate Rule 23(a)(4). *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *see also M.G. v. New York City Dep't of Educ.*, 162 F. Supp. 3d 216, 237 (S.D.N.Y. 2016) (mere fact that certain members of the proposed class have a diminished interest in the outcome of this litigation does not give rise to a fundamental conflict as required to defeat adequacy). In addition, to demonstrate adequacy, class counsel must be "qualified, experienced and generally able to conduct the litigation." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

  Plaintiffs argue that the named Plaintiffs are fit representatives of the proposed class because they have the same incentive as every member of the putative class to prosecute this action (preventing the retroactive application of the Act), they are prepared to vigorously prosecute the action, and there are no known conflicts between the named Plaintiffs and the purported class. Pls. Mem. at 21. Specifically, Plaintiffs claim that the named Plaintiffs and the proposed class all seek to prevent the Act from being applied retroactively and reducing their accrued post-judgment interest. Pls. Mem. at 21. The Attorney General argues that the named Plaintiffs cannot adequately represent the class because they are "credit unions and have admitted they have little or no

familiarity with the business plans and lending practices of banks, utilities, retailers, and other prospective class members." Defs. Opp. at 16. The Attorney General contends that this lack of knowledge precludes the named Plaintiffs because they cannot adequately represent the class. Defs. Opp. at 17.

The Court agrees that the named Plaintiffs and the proposed class generally have the same interest, *i.e* preventing the Act from applying retroactively. However, the Court does note that there is tension between the fact that Plaintiffs abandoned their facial challenge and asserted only an as-applied challenge at the motion to dismiss stage and their claim that they will vigorously prosecute this action on behalf of the purported class. And although the Attorney General argues that Plaintiffs lack the knowledge necessary to represent the proposed class the named plaintiffs have demonstrated "an understanding of the 'basic facts underlying the lawsuit.' " *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 450 (S.D.N.Y. 2023) (quoting *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 200 (S.D.N.Y. 2015)). In particular, the named Plaintiffs have sufficiently demonstrated the necessary minimal degree of knowledge regarding this action, their role in this action, the nature of class-actions, the legal theories, the allegations, and basic information on other putative class members. *See* Haaksma Depo. Tr. at 18:2–19:9, 180:2–183:5; Zasucha Depo. Tr. at 30:1–7, 31:9–33:16, 37:8–38:3; Heim Depo. Tr. at 9:5–10:2, 11:17–12:1, 12:7–12. This is especially true in light of the Second Circuit's "general disfavor of 'attacks on the adequacy of a class representative based on the representative's ignorance.' " *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d at 42 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000)). This is not a "flagrant case[ ], where the putative class representative[s] display[s] an alarming unfamiliarity with the suit" to justify finding a failure of adequacy. *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 51 (S.D.N.Y. 2012) (internal quotations omitted). Therefore, while the Court sees this as a closer call since Plaintiffs asserted an as-applied

challenge, the adequacy requirement is satisfied because the Plaintiffs have demonstrated the minimal requisite knowledge and they possess "no interests antagonistic to the interests of other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (citations omitted).

Finally, to demonstrate adequacy the class counsel must be "qualified, experienced and generally able to conduct the litigation." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d at 291. Here, the Court finds there is no question that class counsel, Venable LLP, has the experience and qualifications required to conduct the litigation. Pl. Mem. at 22.

### C. *Rule 23(B)(2) Requirement*

In addition to the issues with timeliness and the commonality and typicality requirements of Rule 23(a), Plaintiffs also fail to demonstrate that one of the three subcategories of permissible class actions under Rule 23(b) is appropriate. Fed. R. Civ. P. 23(b). Plaintiffs solely rely on the second subcategory of Rule 23(b). Pls. Mem. at 22. Rule 23(b)(2) permits a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Class certification under Rule 23(b)(2) is proper only when a "single injunction or declaratory judgment would provide relief to each member of the class." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020) (quoting *Wal-Mart*, 564 U.S. at 360–61). "A class may not be certified under Rule 23(b)(2) if any class member's injury is not remediable by the injunctive or declaratory relief sought." *Hyland v. Navient Corp.*, 48 F.4th 110, 118–19 (2d Cir. 2022) (quoting *Berni*, 964 F.3d at 146). Therefore, the Court must take into consideration whether the relief sought "is proper for each and every member of the group." *Berni*, 964 F.3d at 146. This does not require that all class members have suffered the exact same injury in the exact same way, it

merely requires that the injuries are similar enough that they can all be resolved with a single injunction. *Houser v. Pritzker*, 28 F. Supp. 3d 222, 250 (S.D.N.Y. 2014); *see also Waite v. UMG Recordings Inc.*, No. 19-CV-01091, 2023 WL 1069690, at *9 (S.D.N.Y. Jan. 27, 2023), *appeal dismissed* (Mar. 31, 2023) (Rule 23(b)(2) requires plaintiffs to show "that adjudication of the case will not devolve into consideration of myriad individual issues.").

The same issues that defeat commonality and typicality also weigh in this case against certifying a class pursuant to Rule 23(b)(2). Determining whether the declaratory and/or injunctive relief sought is actually appropriate for the entire putative class would inevitably devolve into an improper considerations of numerous individual issues. First, as the Court already explained, the central legal question, as identified by Plaintiffs, is whether under *Penn Central* "the Amendment effects a taking by retroactively reducing the value of the class members' vested accrued post-judgment interest, contrary to *their reasonable investment-back expectations*." Pls. Mem. at 8 (emphasis added). Thus, to resolve whether the injunctive and/or declaratory relief sought is appropriate for all of the proposed class members the Court will first need to engage in a highly specific and individualized analysis under *Penn Central* as to the Act's effect on each class member and the investment-backed expectations of each member. The outcome of those individual *Penn Central* analyses may also reveal that the relief sought is in fact only appropriate for some members of the proposed class. *See Berni*, 964 F.3d at 146. As such, certification under Rule 23(b)(2) is inappropriate. *See Brown*, 609 F.3d at 482 (denying Rule 23(b)(2) statewide class certification because the proposed definition of the class includes members who are not at risk of injury by the defendants); *Berni*, 964 F.3d at 146 (the relief sought must be "proper for each and every member of the group").

Additionally, the Attorney General argues, albeit in opposing ascertainability, that the proposed class includes "creditors that hold judgments against consumers but have entirely

abandoned efforts to collect on those judgments, including any accrued interest." Defs. Opp. at 11. Specifically, the Attorney General asserts that "Plaintiffs produced documents showing, and confirmed at their depositions, that many of their unpaid judgments against consumers have been marked as closed by Plaintiffs' collections attorney because the debtor has died without assets, declared bankruptcy or cannot be located" and therefore the retroactive application of the Act cannot cause injury as to those closed files. Def. Opp. at 11–12 (citing Haaksma Depo. Tr. at 38:13–17, 67:18–71:4, 72:25–74:5; Zasucha Depo. Tr. at 120:7–122:20). In support Defendants also point to the report of their expert Professor Wilcox who explained that "debtors sometimes declare bankruptcy, lack attachable assets, die without assets, or cease all contact with the creditor, each of which would eliminate (or severely reduce) the possibility of any more payments." Wilcox Report ¶ 45.

As the Court noted Defendants raised this issue in discussing ascertainability, however, it further informs the Court's decision in determining the appropriateness of a class under Rule 23(b)(2). This is because if the proposed class includes members who are not at risk of injury based on the enforcement of the Act then injunctive relief sought on behalf of the class as a whole under Rule 23(b)(2) would be inappropriate. *See Brown*, 609 F.3d at 482 (denying Rule 23(b)(2) statewide class certification because the proposed definition of the class includes members who are not at risk of injury by the defendants). Therefore, the Court would again need to engage in some type of individualized analysis to ensure that the relief sought is actually appropriate for all of the members included in the proposed class.

The need for these individualized inquiries and the fact that the relief sought would be difficult, if not impossible, to apply on a classwide basis runs contrary to Rule 23(b)(2). *See Berni*, 964 F.3d at 146; *see also Waite v. UMG Recordings, Inc.*, 2023 WL 1069690, at *9. Thus, the

Court finds that Plaintiffs have also failed to satisfy the inquiry under Rule 23(b)(2) for class certification.

## **CONCLUSION**

For these reasons, the motion for class certification is DENIED.  The Clerk of Court is respectfully requested to terminate the motion pending at ECF No. 168.

**SO ORDERED.**

**Date:  March 20, 2025**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**